### GEORGE S. RONEY's (dependent's) CASE.

Berkshire.    September 16, 1941. — September 13, 1944.

Present: FIELD, C.J., QUA, DOLAN, & RONAN, JJ.

*Workmen's Compensation Act,* Dependency, Findings by Industrial Accident Board, Recommittal to Industrial Accident Board.    *Error,* Whether error harmful.    *Family.    Words,* "Find and rule," "Family."

A statement in the findings of a single member of the Industrial Accident Board in a workmen's compensation case, "I find and rule" that the claimant "has failed to sustain her burden of" proof, did not import that such conclusion was required as matter of law but that it was permissible as matter of law and was arrived at as matter of fact.

It is the duty of the Industrial Accident Board in a workmen's compensation case to make such specific subsidiary findings as will permit judicial review of questions of law involved in the ultimate conclusion of the board.

Subsidiary findings made by the Industrial Accident Board in a workmen's compensation case arising out of the death of the employee were insufficient to permit judicial review of questions of law involved in a conclusion by the board that the claimant had "failed to sustain her burden of proving that she was a member of the decedent's family because of a voluntary assumption by him on grounds favored by the law of an obligation to support her, and a dependent within" G. L. (Ter. Ed.) c. 152.

Ordinarily a workmen's compensation case will not be remanded to the Industrial Accident Board for failure to perform its duty as to making sufficient subsidiary findings if the evidence in the certified record would not warrant a conclusion contrary to the conclusion of the board; in such circumstances the rights of the parties are not prejudiced by such failure.

In a workmen's compensation case arising out of the death of the employee, a finding that a woman claiming to be his dependent, who was neither his wife nor his kin, was a member of his family within G. L. (Ter. Ed.) c. 152, § 1 (3), by reason of a legal or voluntarily assumed obligation on his part to support her, would not have been warranted by evidence which, although showing that for many years she and he had lived together in homes furnished by him and managed by him and her and he bore substantially the entire expense of the homes and of her support, showed nothing more than a housekeeper relationship terminable at will.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the workmen's compensation act.

The case was heard by *Broadhurst, J.*

In this court the case was submitted on briefs.

*F. H. Wright*, for the claimant Henrietta Burroughs.

*M. S. Eisner*, for the insurer.

*R. T. Bushnell*, Attorney General, & *J. S. Rezendes*, Assistant Attorney General, for the Commonwealth.

FIELD, C.J.    This is a workmen's compensation case (G. L. [Ter. Ed.] c. 152) arising out of the death from injury of the employee, George S. Roney.    Henrietta Burroughs — herein referred to as the claimant — claimed compensation as a dependent of the employee.    She appealed to this court from a decree of the Superior Court reciting that "the employee left no dependents" and awarding no compensation to her.    The word "dependents" as used in the workmen's compensation law is defined thereby as "members of the employee's family or next of kin who were wholly or partly dependent upon the earnings of the employee for support at the time of the injury."    G. L. (Ter. Ed.) c. 152, § 1 (3).    There is no evidence and no contention that the claimant, at the time of the employee's death, was his wife, child or parent, who was "conclusively presumed to be wholly dependent for support" upon him.    § 32.    The claim of the claimant, therefore, falls within the provision of said § 32 that in "all other cases questions of dependency, in whole or in part, shall be determined in accordance with the fact as the fact may be at the time of the injury."    And the burden of proving the fact of dependency was on the claimant.    *Ferriter's Case*, 269 Mass. 267, 268.    *Moore's Case*, 294 Mass. 557, 558.

According to the findings of the single member the claimant was the divorced wife of the employee's cousin — obviously not his "next of kin."    The single member stated further in his findings: "I find and rule, therefore, that the claimant, Henrietta Burroughs, has failed to sustain her burden of proving that she was a member of the decedent's family because of a voluntary assumption by him on grounds favored by the law of an obligation to support her, and a dependent within the meaning of and entitled to the benefits of Chapter 152, of the General Laws," and dismissed

her claim. See *Moore's Case*, 294 Mass. 557, 560, and cases cited. The words "find and rule" in the statement of the single member do not import that the conclusion stated is required as matter of law, but import, rather, that such conclusion is permissible as matter of law and is found as matter of fact. *Royal Paper Box Co.* v. *Munro & Church Co.* 284 Mass. 446, 450. *Flesher* v. *Handler*, 303 Mass. 482, 483, and cases cited. The reviewing board accepted and adopted as its findings the findings of the single member without making further findings, and dismissed the claim.

The question for determination is whether the decree of the Superior Court on the issue of dependency was right on the findings of fact of the reviewing board, the ultimate trier of fact. Such findings of fact cannot be reversed unless they are not warranted by the evidence or are in some other respect vitiated by error of law. *McGowan's Case*, 288 Mass. 441, 443. *Mozetski's Case*, 299 Mass. 370, 372, and cases cited.

It is clear that the decree of the Superior Court, so far as it denies compensation to the claimant, is in conformity with the ultimate finding of the reviewing board made by accepting and adopting the ultimate finding of the single member. It is also clear that this ultimate finding of the reviewing board is not in conflict with any of its subsidiary findings, and that the evidence reported did not require a finding in favor of the claimant, who had the burden of proof, and, consequently, warranted a finding against the claimant. Even if the evidence would have warranted a finding in favor of the claimant, the reviewing board was not required to believe the evidence favorable to the claimant (*Jameson's Case*, 254 Mass. 371, 372), and, therefore, was not required to conclude that the burden of proof resting on the claimant had been sustained. However, what is here said does not necessarily dispose of the case.

It was the duty of the reviewing board "to make such specific and definite findings upon the evidence reported as would enable this court to determine whether the general finding should stand." *Mathewson's Case*, 227 Mass. 470, 473. *Rozek's Case*, 294 Mass. 205, 207. *Cahill's Case*, 295

Mass. 538, 539. See also *Di Clavio's Case*, 293 Mass. 259, 261–262; *Demetrius's Case*, 304 Mass. 285, 286–288; *Belezarian's Case*, 307 Mass. 557, 559–560; *Zucchi's Case*, 310 Mass. 130, 132–133; *Judkins's Case*, 315 Mass. 226, 227. In *Belezarian's Case* it was said that "the board may not, as a judge sitting without jury in a common law case may, make a naked general finding, nor may the board make a finding consisting of a categorical repetition of the statutory words governing compensability." And in *Mathewson's Case*, 227 Mass. 470, 472, 473–474, where the board found that "the employee received a personal injury which arose out of and in the course of his employment," the court said that "where findings of fact are made based upon the testimony of witnesses whose credibility is to be determined by the committee [under the statute in an earlier form], and where different inferences of fact may be drawn from the evidence, it is not sufficient merely to embody the testimony in the report with a finding that the injury arose from and in the course of the employment," though it was there recognized that "cases may arise where the evidence might be of such a character as would support the general finding and no reasonable inference could be drawn to the contrary." The purpose of subsidiary findings is to preserve to the parties the right of review of questions of law involved in an ultimate finding, by enabling the reviewing court or courts, which can review only questions of law, to determine whether such ultimate finding was based upon correct principles of law. For this purpose there must be a separation of matters of law from matters of fact, and this separation is ordinarily effected, in cases under the workmen's compensation law, by subsidiary findings. *Di Clavio's Case*, 293 Mass. 259, 261–262. *Belezarian's Case*, 307 Mass. 557, 559–560. In a case at common law tried by a judge sitting without a jury a separation of law and fact for the purpose of preserving the right of review of questions of law is made by requests for rulings and the disposition of them by the judge, or by voluntary rulings made by the judge. *Leshefsky* v. *American Employers' Ins. Co.* 293 Mass. 164, 166–167. *Adamaitis* v. *Metropolitan Life Ins. Co.* 295 Mass. 215, 219.

*Sreda* v. *Kessel,* 310 Mass. 588, 589. While a reviewing board may make rulings of law material to its decision, it is not ordinarily required to deal with requests for rulings of law, for the reason that the purpose of such rulings, other than in exceptional cases, is served by the subsidiary findings that are required by the law governing practice under the workmen's compensation law. *Belezarian's Case,* 307 Mass. 557, 559–561.

The statutory requirement here stated would not be satisfied by the general finding of the reviewing board, if it stood alone, that "the claimant . . . has failed to sustain her burden of proving that she was . . . a dependent within the meaning of and entitled to the benefits of Chapter 152 of the General Laws." This finding is unlike the finding in *Di Clavio's Case,* 293 Mass. 259, 264, that the claimant in that case "was not dependent upon the earnings of the deceased for support at the time of injury." That was a finding of fact specifically negativing a particular essential element of dependency within the meaning of the statute. As was said in that case of this finding, "No ruling of law is concealed in it" (page 264). But there is another essential element of dependency within the meaning of the statute in addition to the essential element that the claimant was "wholly or partly dependent upon the earnings of the employee for support," namely, that the claimant was a member of the family of the employee or his next of kin. And the general finding in the present case does not show whether it rested on failure to prove one or the other or both of these essential elements. Although the fact of actual dependency upon the earnings of the employee for support may not involve any question of law, this is not true of the other essential element of statutory dependency so far, at least, as it relates to membership in the employee's family. A finding that a claimant was or was not a member of the employee's family naturally involves a ruling of law. And where this question of law is material to the decision of a case, the proper method of preserving the right of review thereof is by making findings of the subsidiary facts bearing upon this question.

There are not sufficient subsidiary findings in the present case to render immaterial the question of law whether the claimant was a member of the employee's family. There is no finding that this claimant had failed to sustain the burden of proving that she was in fact wholly or partly dependent upon the earnings of the employee for her support. But the subsidiary findings fairly import that the claimant was not one of the next of kin of the employee. It is apparent, however, from the subsidiary findings that the reviewing board rested its decision that the claimant had failed to sustain her burden of proving that she was a statutory "dependent" of the employee upon the ground that she had not sustained the burden of proving that she was a member of his family. There is a finding that the claimant had not sustained the burden of proving that she "was a member of the decedent's family because of a voluntary assumption by him on grounds favored by the law of an obligation to support her."

This finding of a somewhat general nature, however, is not even a categorical finding that the claimant had failed to prove that she was a member of the employee's family, whatever would be the effect of such a finding. The finding is limited to a finding of failure to prove that she was a member of his family because of her failure to prove a voluntary assumption by the employee, on a ground favored by the law, of an obligation to support her. Doubtless failure to prove this fact — in the absence of proof of a legal obligation upon the employee to support the claimant — would be fatal to the claimant's case under the decisions of this court as to the meaning of the words "members of the employee's family" in the statutory definition of the word "dependents." G. L. (Ter. Ed.) c. 152, § 1 (3). See *Moore's Case*, 294 Mass. 557, 558–559, and cases cited. In that case it was said that it "has been recognized, however, that, even if there is no legal obligation on an employee to support persons, the voluntary assumption by him, on a ground favored by the law, of an obligation to support them is an element to be considered in determining whether such persons are members of his family" (page 560). Other

subsidiary findings fairly import that no legal obligation of the employee to support the claimant was proved. However, the finding now under consideration fails to show whether the claimant failed to prove that the employee voluntarily assumed an obligation to support the claimant, or whether she failed to prove that, the employee having assumed such an obligation, it was assumed "on a ground favored by the law." The finding, therefore, may conceal a ruling of law as to what constitutes "a ground favored by the law" for the voluntary assumption of an obligation to support the claimant. And the findings of the reviewing board already considered are not such as to present this question of law. The record of the case discloses that the reviewing board must have known that this question might be a determining factor in the case. Clearly, according to the principles already stated, it was the duty of the reviewing board to make such detailed findings of fact as would show that this question of law was not material to the case or as would enable the reviewing court to decide the question of law in order that an appropriate decree might be rendered upon the facts found by the reviewing board. See G. L. (Ter. Ed.) c. 152, § 11; *McNicol's Case*, 215 Mass. 497, 502; *Walsh's Case*, 281 Mass. 228, 232.

Apart from the findings already considered there are a few statements in the findings that can be interpreted as findings of fact, but they are of an incidental nature and fall far short of showing whether or not the claimant was a dependent of the employee or of showing whether or not she was wholly or partly dependent upon his earnings for her support or whether or not she was a member of his family. The other statements in the findings are recitals of evidence, or statements as to findings warranted by such evidence or as to doubt as to the credibility of this evidence. There is no express finding that the claimant and the employee made their home together, bearing on the question whether or not she was a member of his family, although possibly the findings considered as a whole may so import. There is a recital that "placing the most favorable construction on the evidence" this fact and various

other facts appear, but it is not stated that the reviewing board placed the most favorable construction upon this evidence, and, on the contrary, it is stated that various things tend to cast doubt upon the testimony of the claimant and her daughter which constituted a large part of the evidence referred to. In this state of the record it is impossible to determine what substantive facts — other than certain incidental facts — were found by the reviewing board. Consequently we are not informed whether the decision of the reviewing board was based upon a failure of the claimant to prove subsidiary facts or upon a ruling of law as to the effect of subsidiary facts proved but not expressly found. Since no adequate separation of matters of fact and matters of law was made by the reviewing board, it is impossible to determine whether or not the general findings of the reviewing board that the claimant had failed to prove that she was a "dependent" within the meaning of the statute or that she was a member of the employee's family were based upon a ruling upon a question of law concealed in these findings. These findings and the meager findings of subsidiary facts fail to show the view of the facts taken by the reviewing board. They do not afford the material for judicial review of the action of the reviewing board. Consequently the natural disposition of the case would be to remand it to the reviewing board for the finding of subsidiary facts. *Demetrius's Case*, 304 Mass. 285, 288. *Craddock's Case*, 310 Mass. 116, 125–126.

Nevertheless, a case ordinarily will not be remanded to the reviewing board for the finding of subsidiary facts if the evidence would not warrant a finding contrary to the general finding of the reviewing board. See *Rozek's Case*, 294 Mass. 205, 207; *Cahill's Case*, 295 Mass. 538, 539–540. This is not on the ground that it was not the duty of the reviewing board to make findings of subsidiary facts, but is rather on the ground that the rights of the parties were not jeopardized by the failure to make such findings (see *Cahill's Case*, 295 Mass. 538, 539–540), and that it is apparent that such findings would serve no useful purpose, since in no event could such findings, warranted by the

evidence, lead to a result contrary to the general finding of the reviewing board.  There may be exceptional cases in which the evidence is of such a character that findings of subsidiary facts are not required.  But the statutory procedure for workmen's compensation cases does not contemplate that ordinarily the reviewing board should dispose of a case by an express or implied ruling upon the sufficiency of the evidence — as, for example, may be done in an action at law by the direction of a verdict — without passing upon the credibility of the evidence or stating the inferences drawn therefrom.  It is the duty of the reviewing board to find the facts in such detail that the Superior Court can render the decree required by law upon the facts so found.  The propriety of the rule requiring the finding of subsidiary facts by the reviewing board is particularly apparent in the present case where the reviewing board expressed doubt as to the credibility of much of the evidence in support of the claim of the claimant, although it did not state expressly that it disbelieved this evidence.

We conclude, however, upon an examination of the evidence reported, that this evidence did not warrant a finding contrary to the general finding of the reviewing board.  There was no evidence that the claimant was a dependent of the employee unless she was a member of his family.  And the evidence did not warrant a finding that she was a member of his family.  "It has been said that ' "Family" in its usual sense means "the collective body of persons who live in one house and under one head or management." . . . That is the significance ordinarily attributed to the word under the act.'  *Cowden's Case,* 225 Mass. 66, 67.  *Gritta's Case,* 236 Mass. 204, 206.  Kinship or marriage between such persons is not essential to the existence of a family.  *Peterson's Case,* 270 Mass. 309.  But in some circumstances where there is such a relationship between persons not living in the same household they may be members of a family.  *Newman's Case,* 222 Mass. 563, 568."  *Moore's Case,* 294 Mass. 557, 559.  There was no evidence of kinship or marriage between the claimant and the employee.  The evidence on this point is merely that the claimant was the

divorced wife of a cousin of the employee. But there was evidence that the claimant and the employee made their home together for about twenty-seven years, in several different places in rented apartments or houses, that when they began to live together the claimant had two small children, a son and a daughter, that the children lived with the claimant and the employee for undefined periods, and that the son was living with them at the time of the employee's death. There was evidence that the employee had separated from his wife before the claimant and the employee began to live together, that the employee was not then divorced and that he did not thereafter live with his wife. The claimant testified that she knew that the employee "was married and had a child but was not living with his wife." She also testified that she had known the employee since her marriage to his cousin; that before she began to live with the employee she saw him from time to time; that he took his meals at a restaurant, but that she did not know where he stayed.

There was evidence tending to show that before the claimant began to live with the employee she "was not very strong and gave up work because she was not able to hold her job." The claimant testified that she told the employee about her health and not being able to hold her job, and that he felt sorry for her, and said to her, "I am going to make a home for you and the children," "Let me make a home for you," and that at first she refused but later assented. She testified that "She thought it was a pretty good proposition when she went to live with Mr. Roney to have him supply a home and give her the money. It was contemplated that she would manage the household and he would have a home. That was the original arrangement. No definite arrangement was made afterwards."

This testimony of the claimant tended to show that the arrangement between her and the employee contemplated a relation of the claimant to the employee in the nature of a housekeeper relationship. Neither this testimony nor the other evidence of the manner in which the employee and the claimant lived together — much of which was testimony

of the claimant — warranted a finding that she was a member of the employee's family within the meaning of the workmen's compensation law. There was evidence that while the claimant and the employee were living together the claimant earned very little money from other employment. There was evidence that with this minor exception the expense of the household was borne by the employee out of his earnings and that substantially the entire support of the claimant was furnished by him. So far as there was evidence on the subject — and this evidence was testimony of the claimant — the houses in which they lived were selected by the employee and rented in the name of the claimant. According to her testimony he "wanted it that way because of his not being a divorced man." The claimant testified that in one instance they bought their furniture on the instalment plan but that it was bought in her name because the employee "wanted it that way."

The claimant testified: "Mr. Roney would hand his pay envelope to . . . [her] telling her to use it as she needed it. They talked together about how much was there. She paid some of the bills and got receipts. He wanted it that way. He paid some of the bills and did all the shopping in the chain stores bringing the things home. . . . Mr. Roney and she would talk over the payment of bills and the buying of groceries and things for the children to wear and then would ask her for some money. He would purchase the articles and bring them home, but always talked it over with her before he made any purchases, deciding how much would be paid and what kind would be bought. . . . [The claimant] had a very serious operation for which Mr. Roney paid. . . . He trusted her and knew she was a good manager and would do the right thing. . . . [The claimant] did not have complete control over running the house and providing a home for him. He and she managed the house together, talking things over and making out the grocery list together. It was only once in a while she bought any groceries. She did not consider what she did as a job. It was not an unusual arrangement. Mr. Roney wanted to help her. . . . She had something but not all to say about

how the house would be run. Mr. Roney never talked about going away."

There was no evidence that the employee or the claimant could not have terminated the arrangement between them at any time, although in fact it continued for many years. The evidence did not warrant a finding that the employee assumed any obligation to support the claimant and, for a time, her children, other than in accordance with the original arrangement between them, terminable at will, for the purpose of securing her services as a housekeeper in the home that the employee provided for himself. Even if the arrangement was economically favorable to the claimant and she exercised considerable discretion and judgment in the management of the household, it would not follow that her position was other than that of a housekeeper. Nor is a different position of the claimant shown by the evidence of interest of the employee in the claimant's children while they lived in the household, extending to giving them advice and in some instances correcting them. The evidence suggesting some other relationship of the claimant to the employee than that of housekeeper does not go far enough to show that the employee made the claimant a member of his family. There was some evidence of conversations between the claimant and the employee with respect to marriage, but according to the evidence they did not marry because of the claimant's health and because the employee was not divorced. This evidence does not show any change in the arrangement made when the claimant and employee began to live together. The evidence that the employee had been acquainted with the claimant for several years, that she was the divorced wife of a cousin, and that he was sorry for her does not warrant the inference that he voluntarily assumed her support other than as an incident of the maintenance of a home for himself. The evidence may tend to show the reasons for the selection by the employee of the claimant as his housekeeper, but it goes no farther than that, though it may tend to show that one of the employee's reasons for selecting the claimant as his housekeeper was a generous impulse toward her.

Although kinship, legitimate or illegitimate (see *Gritta's Case*, 236 Mass. 204), is not essential to constitute a person a member of an employee's family and a "dependent" of the employee (see *Peterson's Case*, 270 Mass. 309), in most instances such a relationship has been one of the grounds for finding that the claimant was a member of the employee's family and a "dependent" of the employee. In *Kenney's Case*, 222 Mass. 401, 404, the claimant was a sister of the employee who had given up working in order that she might care for her brother, the employee, and a finding of dependency was sustained on the ground that this sister was supported by her brother in "recognition of a moral if not a legal obligation to support her, in accordance with the promise made when he induced her to become a non-producer." See also *Herrick's Case*, 217 Mass. 111, 113. There was no evidence in the present case that the claimant was induced to become a nonproducer in reliance upon a promise by the employee to support her. In *Peterson's Case*, 270 Mass. 309, 312, no relationship of the employee was shown, but there was evidence that the employee had been cared for and educated in his youth by the claimant and her husband and a finding was warranted that the employee supported the claimant "in recognition of a moral, even if not a legal obligation to support her in view of her poverty and her care of him during the years he lived with her and before he was of sufficient age to earn his own living." No such situation is disclosed by the evidence in the present case. The evidence in *Holmberg* v. *Cleveland-Cliffs Iron Co.* 219 Mich. 204, in which an award of compensation was sustained, was more favorable to the claimant than is the evidence in the present case. The conclusion here reached is based upon the insufficiency of the evidence to warrant a finding that the claimant was a member of the employee's family by reason of a legal obligation of the employee to support her or by reason of a voluntary assumption by him of an obligation to support her except as such support was furnished to her by him as a form of compensation for her services as housekeeper. The conclusion is not based on the ground of an illicit relation between the claimant and the employee not

favored by the law. See *Moore's Case*, 294 Mass. 557. The evidence warranted a finding that there was no such relation.

*Decree affirmed.*