ROLAND E. LARRABEE's (dependents') CASE
(and a companion case).

Suffolk.    January 5, 1966. — February 21, 1966.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Workmen's Compensation Act,* Findings by Industrial Accident Board, Recommittal to Industrial Accident Board, Appeal, Injuries to which act applies, Repayment of compensation. *Proximate Cause.*

The disposition of a petition under G. L. c. 152, § 17, in a workmen's compensation case to suspend a decree of the Superior Court pending an appeal therefrom lies in the discretion of the single justice of this court. [309]

Where, in a workmen's compensation case involving the death of an employee whose work in a factory consisted of cutting pieces of processed rubber stock and plastic stock at one machine and carrying them to another machine, findings by the Industrial Accident Board that the employee's death was due to liver insufficiency and that the insufficiency had a chemical cause were warranted by the evidence but further findings by the board, referring to inhalation by the employee of "whatever" fumes emanated from the materials carried by him and of "varied chemicals and substances," failed to identify any toxic fumes inhaled, and there were other errors in the board's findings in material matters, a final decree of the Superior Court in favor of the claimant was reversed and the case was ordered to be recommitted to the board for clarification of its findings and further appropriate proceedings.  [309–311]

Where it appeared upon appeal from a decree of the Superior Court in favor of the claimant in a workmen's compensation case that the insurer had not made the payments directed by the decree, although the decree had not been suspended, this court ordered that such payments be made forthwith by the insurer notwithstanding that on the merits the decree was reversed and the case was ordered to be recommitted to the Industrial Accident Board for further proceedings.  [311–312]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the Workmen's Compensation Act.

The case was heard by *Pillsbury, J.*

PETITION filed in the Supreme Judicial Court for the county of Suffolk on April 23, 1965, and heard by *Spiegel, J.*

*James C. Gahan, Jr. (Paul A. Kelley* with him) for the insurer.

*Timothy H. Donohue (Michael J. Monahan* with him) for the claimant.

REARDON, J. This is a claim by the widow of Roland E. Larrabee for workmen's compensation benefits for herself and minor children. The findings and decision of the single member were adopted by the reviewing board. In the Superior Court a final decree was entered for the claimant. We consider also a companion case involving the insurer's appeal from a decree of the single justice dismissing a petition brought by the insurer for suspension of the decree of the Superior Court pending the insurer's appeal to this court from the Superior Court decree.

The claim was filed on May 3, 1958, alleging that on April 9, 1958, the employee died from "[i]nhalation of noxious, deleterious, and harmful fumes and dust from machines and in the atmosphere of working area of . . . [his employer's] factory in which there were inadequate ventilation facilities." The single member heard evidence on this claim in a series of nine hearings held over a period in excess of four years. The last hearing was held on July 23, 1963. The single member's decision was filed May 27, 1964. Having heard the parties on July 27, 1964, the reviewing board filed its findings and decision on January 25, 1965. The final decree of the Superior Court was entered on March 26, 1965. The litigation of this matter has consumed an unconscionable amount of time and, simply on that account, has worked an injustice upon both parties.

We summarize the findings of the single member. It was agreed that the claimant was the dependent widow of the deceased and that there were three dependent minor

children. The employee had been employed by Hodgman Rubber Company (the company) for about seven years before his death. The company was engaged in the manufacture and processing of rubber, rubberized goods, plastics and plasticized goods. The employee worked on the application of rubber and plastic to cloth. He was a member of a five man calender crew, a calender being a machine through which bolts of cloth pass over rollers to be coated with water repellent stocks of different compositions. In the process, rubber stock was placed in a warm-up mill in which it was made pliable by its own friction during kneading and occasionally by the application of external heat. "Softeners" were added on occasion in the warm-up mill to make the rubber stock pliable. The pliable stock was then carried to a feed mill for further conditioning. The job of the employee was to cut fifteen to twenty pound slabs from the pliable mass in the feed mill and carry them twelve to fifteen feet to the calender where he would lift the slab of pliable stock over his head and wedge it in the "bight" between two rollers which would move it forward and eventually press it onto the cloth. Other members of the crew engaged in different operations in the process. If a plastic rather than a rubber stock was employed the employee's job was the same. In breaking down the plastics different softeners would be used in the warm-up mill and more heat would be required than for the rubbers. Stronger odors were produced in the operation with plastics. On the Saturday before his death the employee worked with plastics, and on that day, April 5, 1958, he complained to his superior of distress due to odors and fumes. He did not work on Sunday but returned to work the following three days. On the last day he worked, Wednesday, April 9, he was compelled to leave work early. His superior, the machine operator, testified that the employee appeared to be "all done in . . . pale . . . weak . . . shaky looking." The employee's widow said that he had complained occasionally of headaches for two years and on the last Saturday he worked he had experienced a severe headache. Following

his arrival home on April 9, his wife found his temperature
to be 102 degrees; a doctor was called but before the arrival
of the doctor the employee gave evidences of serious dis-
tress and died.  Since 1957, he had been under treatment
for overweight and hypertension.  On April 3, 1958, in a
regular visit, his doctor had increased his dosage of diuril,
a chlorothiaside medication which had been previously pre-
scribed for him.

An autopsy was performed by a Dr. William C. Swatek,
who gave his opinion that the cause of the employee's death
was an acute liver insufficiency which developed between
sixteen hours and four days before death.  On the assump-
tion that the deceased had inhaled certain fumes at work,
Dr. Swatek gave further opinion that "there was direct
causal relation between the inhalation of chlorothene fumes
in the course of his employment and the liver damage . . .
and stated his reasons for his opinions."  An internist
called to testify for the claimant on the assumption that
toxic fumes had been inhaled "also gave opinion that there
was causal relation between the sudden dysfunction of the
employee's liver, which caused his death, and his employ-
ment," and stated his reasons therefor.  The employer pro-
duced two medical witnesses who testified to the contrary,
stating that "no relation was established between the em-
ployee's death and his activities and the conditions of his
employment as likewise described to them."  Evidence
was produced to the effect that the stock, softeners, accel-
erators, and lacquers used were all "non-toxic and within
the limits prescribed by State law."  The single member
found this testimony "not final and conclusive on the issue
of the causal relationship of the employee's death or as to
whether or not they were toxic to this particular employee."
He noted that the employee, as feed man, was "most ex-
posed to the inhalation of *whatever* fumes emanated from
the rubber and plasticizers," and that he carried the mate-
rials "directly under his nose during his working hours
. . . and perforce inhaled *whatever* odors and fumes ema-
nated from the batches . . . carried . . ." (emphasis sup-

plied). The single member further said that the "suddenness of the employee's sickness on the job following his complaints of the odors," and the "sequence of events and their chronological occurrence" supply the "reasonable and probable inference that the damage to the employee's liver was caused by the close contact with the inhalation of *varied chemicals* and *substances* used in the course of his employment . . ." (emphasis supplied). The single member ordered payment of compensation to the widow and certain other payments to be made for medical testimony and burial fees.

The insurer moved before the reviewing board to strike certain testimony from the record, to renew objections and exceptions to evidence, and to recommit the matter in accordance with certain offers of proof. The decision of the reviewing board sustained the single member but altered his order slightly to make it conform to G. L. c. 152, § 31. The board ordered that the $25 a week compensation being paid to the widow should stop on January 24, 1963, when the maximum amount of $10,000 had been paid to her. In the Superior Court the insurer moved that the case be recommitted to the board for various reasons, specifically for the taking of evidence on "whether the claimant has sustained the burden of proving what was the cause of the alleged liver damage . . . ." The motion was denied.

The appeal from the final decree did not stay the enforcement of that decree and there followed the petition to the single justice under G. L. c. 152, § 17, seeking suspension of the enforcement of the decree, alleging that no inequity or hardship would be caused by such suspension, that the appeal involved substantial questions of law, and that "if the decision of the Supreme Judicial Court is in favor of the Insurer, it will be extremely difficult, if not impossible, for the Insurer to recover the amount of payments which will have been paid to the claimant . . . ." The petition for the suspension was dismissed. This was in the discretion of the single justice and there was no error.

While the testimony was in conflict as to the cause of

death, Dr. Swatek, who did the autopsy, testified that the employee's death was due to acute liver insufficiency. There was other testimony which "would have warranted a finding that the employee died of a heart attack unrelated to his work." The single member, however, weighed the testimony and chose to accept the explanation of the employee's death which was proffered by the claimant. *McGowan's Case*, 288 Mass. 441, 443. *Mozetski's Case*, 299 Mass. 370, 372. *Roney's Case*, 316 Mass. 732, 734.

There was conflicting evidence also from the medical experts on whether the damage found by the single member to have occurred to the employee's liver was by inhalation of chemicals rather than by viral or bacterial action. Without detailing this conflicting evidence it may be said that here, again, was a question for the single member's judgment and he chose to believe the medical testimony which indicated a chemical cause for the liver insufficiency.

Dr. Swatek testified that, on the assumption that the employee had inhaled fumes that contained chlorothene, "there is a direct causal relationship between the inhalation of the fumes containing the chlorothene and the destructive process in the liver. . . . [M]any of the chlorinated drugs are capable of producing this destructive type of lesion in the liver." Dr. Swatek said he could tell from the alteration of the liver tissues what type of chemicals had been inhaled. Dr. Swatek's opinion was admitted subject to later showing by the claimant that the employee actually had inhaled chlorothene or some other "chlorinated drugs."

The insurer's principal and proper objection is that the single member and the reviewing board failed to designate what chlorinated chemical, if any, was inhaled and from what source it came. There having been no finding that one or several *identified* chemicals are at fault, the insurer is denied the opportunity to test a crucial basis of the decision for the claimant. This handicap for the insurer is made the more serious in this case by the single member's having apparently ignored in his findings a large portion

of the evidence. There was testimony given that a liquid wash gave off chlorothene fumes as it was applied to the coated cloth at a spot near the end of the calender machine twelve or fifteen feet from the place where the employee worked. There was considerable testimony regarding the efficiency of the ventilation for the wash fumes and the level of toxicity produced by them. The single member referred in his findings to "varied chemicals and substances" as being the cause of death. He refers specifically in his decision only to the fumes emanating from the solid rubber and plastic stocks although there was testimony that these stocks gave off no chlorothene or chlorinated hydrocarbon fumes. His findings do refer to the ventilation which was associated only with the washes, but it is not possible to determine whether in his belief the fumes from the washes affected the employee. There is nothing in the record which would tend to show the presence of dangerous chlorinated hydrocarbon in the rubber or plastic stock and there is insufficient evidence upon which a finding could have been made that lethal fumes came from those stocks alone. The findings made were ambiguous and insufficient, leaving in doubt the chemical responsible for the liver damage and its source.

We note other errors in the decision of the single member. He erroneously found that lacquers were used on plastics in the warm-up mill, made mistaken reference to dates which were of considerable importance in the progress of this employee toward his death, and indicated further that as feed man the employee carried stock from the warm-up mill to the feed mill, when it was incontrovertible that such work was actually performed by the warm-up man. These errors bear upon the amount and nature of the employee's exposure to the fumes in the area where he worked and are to be rectified on recommittal.

The decree of the single justice denying suspension of the decree of the Superior Court lay in his discretion and there was no error. The insurer should have complied with the decree of the single justice. The insurer is ordered to

pay forthwith to the widow and children of Larrabee those sums which it was ordered to pay by the decree of the Superior Court. In case No. 13,471 the final decree is reversed and the case is to be remanded to the board for clarification of its findings and decision and for such other proceedings consistent with this opinion as the board may deem appropriate. The decree of the single justice in case No. 13,460 is affirmed.

*So ordered.*