KINSEY *v.* SHELLER MANUFACTURING CORPORATION.

[No. 18,587.   Filed May 9, 1955.   Rehearing
denied June 10, 1955.]

*Archie Lapin,* of Muncie, for appellant.

*George H. Oswalt, William B. Weisell,* and *Slaymaker, Locke & Reynolds,* of Indianapolis, for appellee.

KELLEY, C. J.—Proceeding before the Industrial Board wherein the Full Board found that the appellant, during the week of November 19, 1951, did not sustain an accidental injury arising out of and in the course of his employment by appellee. From an adverse award appellant brings this appeal for a review thereof upon the assignment that the same is contrary to law.

Appellee filed herein its motion to dismiss this appeal or, in the alternative, to affirm said award. The main ground of appellee's motion is that we do not have jurisdiction of this appeal by reason of appellant's failure to file his praecipe for transcript with the Secretary of the Board within fifteen (15) days from the date of the award as provided in

Rule 26 of the Board. A similar contention was adversely determined by us in *United States Steel Corporation* v. *Douglas* (1955), 125 Ind. App. 212, 123 N. E. 2d 899. We find no reason to now change the views we therein expressed.

The other grounds specified in appellee's said motion to dismiss or affirm have been carefully considered by us and we apprehend none which are fatal to appellant's right to a review of the challenged award.

The evidence pertaining to the vital issue in the cause, i.e., that appellant sustained an accident arising out of and in the course of his employment by appellee, is scanty, indefinite, inconclusive, and undeveloped. Generally, adhering to the evidence most favorable to the award, we think the record discloses substantially the following:

At the time of the alleged occurrence in November, 1951, the appellant had been in the employ of appellee for some five and one-half years. The appellant was near 61 years of age, of slight stature, about five feet seven and one-half inches in height, and weighed approximately 120 pounds. In 1948, while in the appellee's employment, he suffered a right and left inguinal hernia, necessitating surgical repair which was recognized by appellee as industrial and the medical expenses and compensation benefits derivative therefrom were paid by appellee.

Appellant's particular work at the time of the alleged accident, consisted of stacking wooden trays or racks, each measuring some five and one-half feet long and eleven inches wide, with small rubber products, in layers of five or six, so that, when filled, each tray weighed variously from 75 to 100 pounds, lifting the filled trays onto mobile carts, wheeling the carts to the position

of permanent racks, and then lifting each filled tray individually from the cart onto the permanent rack.

The date specified by appellant as the day of the alleged accident is much disputed and appears without definite establishment. From the evidence and the finding of the Board, it may be fairly assumed, however, that the time referred to was sometime during the week of November 19, 1951. ·

Appellant testified that at the time of lifting and pushing one of the loaded boards he "just became sick and I had to let go my hold—my whole body relaxed—I remember trembling like a rag, and I knew something was wrong; hurt awfully." The time was placed at 2:30 p.m., but appellant, with the assistance of a fellow worker, continued his work until quitting time at 3:00 p.m. He told the foreman that he had disabled himself and "was not able to do that work" and remembered rubbing himself across the groin and lower abdomen. After having notified the foreman, he said he "wheeled the cart; there wasn't much more to do; they generally work until four o'clock, if they don't have enough to keep them busy they quit at three."

Later, on the same day, he went to see his physician, Dr. Moran, who treated him for prostate trouble and gave him some medicine. Said physician was the only medical expert to testify. He said that at the time he examined appellant. he, the appellant, had a chronic colon condition, numerous post-operative adhesions from his previous operation, with severe pain in the left inguinal region, and that the incision "didn't seem very firm and I judged he was developing a recurrent hernia." He further testified that prior to November, 1951, he had been treating appellant for prostate trouble and a nervous condition; that on November 23, 1951, he examined appellant for severe pain in the left

inguinal region and "he had some elevation in the area and I suppose that was the beginning of a recurrent hernia" on the left side; that in his opinion there was evidence of a recurrent, left side inguinal hernia.

In answer to questions of the hearing member, the physician said that he had treated appellant a number of times "for different things"; that appellant gave him a history of "severe pains since his first operation" back in 1948; and that appellant told him he (appellant) noticed "severe pains, more swelling in the left side, lower left abdomen"; and, with reference to any history of any traumatic incident, the doctor said "Well, in his work over there, in lifting a board, I believe he noticed this developed, *afterwards*." (Italics supplied.) On cross-examination the medical witness said that appellant's chief complaint was "gastrointestinal . . . and the diagnosis on that date (November 23, 1951) was neuropsychosis — very nervous, and marked gastrointestinal distention of his whole abdomen." He further stated that appellant was still taking treatment for "this severe pain—colitis and considerable trouble with his bowels—there's an obstruction there" and that on his examination of appellant on November 23, 1951, he did not find a hernia on the right side.

Continuing with his testimony, appellant said that after he arrived home from his work he found he could not go back to work and he called (telephoned) appellee's personnel manager and told him he wasn't able to go back to work; that "then this prostate trouble got worse right away and I went to Dr. Schulhof at Muncie" the last of January (1952) who treated him every week and gave him a "lot of medicine," treated the prostate and examined inside the bladder, put him to "sleep" and "there was a lot of trouble in there"; that Dr. Moran "wanted" an operation performed and on June 28th

(1952), Dr. Schulhof operated on him for a left side hernia and "When he opened me" he found a hernia on the other side and operated on that side "over the old operation of Dr. Spahr" (in 1948); that he was still receiving treatment from Dr. Schulhof "most of the time; I am yet all my life."

It thus appears from the evidence that from November, 1951, to June, 1952, appellant was under treatment by his physicians for a prostatic condition, chronic colon and mucosa colitis, acute indigestion, bowel disturbance, post-operative adhesions, severe pain in the abdominal region, and nervousness. During that time a recurrent inguinal hernia developed on the left side necessitating surgical repair on June 28, 1952, at which time a recurrent inguinal hernia was found on the right side, and it, too, in the same operation, was subjected to surgical repair.

Appellant made a non-occupational disability claim for prostatic trouble under a group insurance policy carried by appellee and received his benefits thereunder at the rate of $32.50 per week until June 10, 1952.

It does not appear that appellant reported or complained to appellee that he was suffering from a hernia nor that he requested of appellee treatment for hernia. His first mention of hernia disability was in June, 1952, at which time he wrote a letter to the insurer issuing said group insurance policy, advising it of his hernial condition.

Appellant returned to his work for appellee on February 25, 1953, and his brief discloses that his present claim is for compensation benefits from June 10, 1952, to February 25, 1953, together with the medical, surgical, and hospital expenses incurred by him.

One of the essential facts which must be found by the Board as a legal basis for an award is that the applicant

sustained an accidental injury arising out of and in the course of his employment. The burden of establishing such fact rests upon the claimant for compensation. The Board, as the trier of the facts, is charged with the duty of concluding as to the ultimate fact of such accidental injury and for such purpose, it posseses the exclusive prerogative of weighing the evidence and drawing reasonable inferences therefrom. If there exists any substantive evidence of probative value to sustain such material finding or the evidence is not of such character as to force a contrary conclusion as to such issue, we cannot disturb the finding in that regard.

The evidence before us reveals that appellant is in a disturbed condition of health and that he suffers from unfortunate organic infirmities, including inguinal hernias. But such evidence does not so definitely or conclusively establish that the hernias, or either of them, resulted from an accident arising out of and in the course of his employment by appellee as to warrant us to molest the finding.

Appellant, however, further contends, in effect, that the evidence shows that he had suffered previous hernias while in the employ of appellee and that such evidence "strongly forces the conclusion that these present recurrences developed as a result of his employment."

Under the provision of §40-1410, Burns' 1952 Replacement, a compensation claimant may, within two (2) years from the last day for which compensation was paid under the original award, file his application for an award on account of a change in condition by reason of recurrence of his disabilities. The limitation of time for filing the claim, as provided in the Act, is a condition precedent to the right to maintain the action and the burden of proving the claim was filed within the allotted period is upon the claimant.

*Railway Express Agency* v. *Harrington* (1949), 119 Ind. App. 593, 596, 88 N. E. 2d 175.

In the instant case appellant did not prove the last day for which compensation was paid to him under his original award nor did he establish that his claim was filed within two years from that date. As held in the last cited case, such proof was a condition precedent to appellant's right to recover on the basis of a change of condition. It follows that appellant's failure to sustain his burden in said particular renders his said contention fruitless.

The award is affirmed.

Royse, P. J., dissents with opinion.

### DISSENTING OPINION

ROYSE, P. J.—For the reasons stated in my concurring opinion in the case of *United States Steel Corporation* v. *Douglas* (1955), 125 Ind. App. 212, 123 N. E. 2d 899, 909, I believe this appeal should be dismissed for failure to comply with the provisions of Rule 26 of the Industrial Board of Indiana. I express no opinion on the questions upon which the majority have decided this case.

NOTE.—Reported in 126 N. E. 2d 267.