COUCH *v*. HARMON, PERSONAL REPRESENTATIVE ETC.

[No. 19,218. Filed April 8, 1959.]

Sydney L. Berger, of Evansville, for appellant.

Butt, Bowers & Anderson, of Evansville, for appellee.

KELLEY, J.—Appellant filed his application for compensation, alleging that he received personal injuries by reason of an accident arising out of and in the course of his employment by John O. Harmon, now

deceased. The appellee is the personal representative of said decedent.

The full board found that appellant sustained personal injuries by reason of an accident, which resulted in a 50% permanent partial impairment to the man as a whole, and that said injuries were received while appellant was performing services for the decedent as a domestic servant. Award for appellee followed.

Appellant challenges the award as being contrary to law on the ground that the undisputed evidence establishes as a matter of law that at the time of his injury appellant was not engaged in services as a domestic servant but was acting as a chauffeur for decedent.

The evidence discloses that the decedent was an oil producer; he maintained no office and his business was transacted at his home located on about three and one-half acres of ground in Evansville, Indiana; his wife, appellee Margaret D. Harmon, did his secretarial and office work there at the home. In the fall of 1955, appellant was employed by the decedent "primarily" to "work around the house"; "to take care of the horses and lawn and things around the house, whatever needed doing, when Mr. Harmon was out of town, whatever duties I had around the house for him." He "fed the horses, he cleaned the stalls, he curried the horses, rode them, mowed the lawn, sprayed the trees, maintained the fences, cleaned the garage, in the winter time took care of the coal furnace."

Appellant possessed a chauffeur's license. He drove decedent's Cadillac automobile. The evidence favorable to appellee reveals that appellant drove the car on errands for Mrs. Harmon; to get nails, boards, horse feed; and to take the dogs to the veterinarian.

That appellant drove decedent to Louisville, Kentucky, in November, 1955; on December 1, 1955 he drove to Louisville to return decedent to Evansville; on December 20, 1955 he drove to St. Louis to return to Evansville some business associates of decedent; in April, 1956 he drove some horses to Chicago and again in July, 1956; on May 20, 1956 he flew to Chicago and drove the Cadillac back to Evansville; on July 1, 1956 he drove decedent to Chicago, and in August, 1956, he flew to Indianapolis and drove the Cadillac back to Evansville.

There is uncontradicted testimony by appellant that he drove to Owensboro, Kentucky, once or twice and went up to the Oil Rigs there; that he drove to Terre Haute, Indiana, two or three different times; that the occasion for the trip to Louisville was to catch a plane; that on one of the trips to Terre Haute, the decedent was going from there to Cleveland; that one of the trips to St. Louis was made to bring "some fellows" in from "I don't know the town in Texas", and bring them back to Owensboro in connection with decedent's oil work; that he drove from his home and picked up decedent at the Hulman Building, in Evansville, from a lawyer's office where he was on business "something about some oil leases".

Mrs. Harmon, widow of decedent and the appellee herein in capacity of personal representative, testified that decedent did go into oil transactions involving millions of dollars; that he did quite a bit of oil operations in Kentucky and had business dealings in Chicago; that he would take various trips to various parts of the country; that decedent had no other employee during the time appellant worked for him; that appellant would do just about anything decedent

asked him to do; that she could not be definite "all the time" as to whether the trips were business trips or for what purposes they were made; that occasionally decedent would bring some of his business associates out to the house; and that the greatest portion of appellant's time was occupied taking care of the house and in the summer mowing and taking care of the lawn.

On September 22, 1956, between 11:30 P.M. and 12:00 o'clock, P.M., decedent called appellant and "wanted to go to St. Louis"; appellant's wife took him in their car from their home, which was three or four miles from the home of decedent, to "Washington Avenue and Governor" where they met decedent. Appellant got in decedent's car and decedent drove the car to Mt. Carmel (the location of Mt. Carmel is not disclosed). The evidence is somewhat hazy as to the precise, subsequent occurrence of events, but appellant relates: "I drove in the State of Illinois, . . . . Then we pulled off to the side, he (decedent) was getting sleepy, he wanted me to drive. I got under the wheel and he taken a pillow . . . , he put the pillow up to his head and he went to sleep. . . . I remember going through Carmi, making a right turn that goes out of Carmi, that is the last thing I remember until I come to." Decedent was killed in the accident and appellant was injured.

John O. Harmon, Jr., son of decedent, testified that at the time of the accident he was working on his Masters Degree in College in Norman, Oklahoma; that about a week before the accident he phoned his father about his intended purchase of a house trailer and that his father told him he "would come to look them over" and that "he would be down the next week end"; that on Friday, preceding his death, de-

cedent notified the witness "what plane he would be in on in Oklahoma City" at approximately 9:00 or 10:00 o'clock in the morning; that decedent didn't tell him he was going to make a business trip out of the trip; that decedent was making the trip to visit the witness; that he didn't "feel" that his father was going to Texas on an oil deal after seeing the witness and the plans were decedent was "going to be home the next day I think"; and that he didn't know that decedent had told the witness' mother he was going to Texas on an oil deal, "I assume he did, I don't know."

Mrs. Harmon then testified that decedent had said to her that the trip he was going on was a business trip to Texas; that he would be back the following day (Sunday); and that they had reservations to go to New York on that Sunday night.

The aforesaid evidence presents a factual situation from which varying inferences may be drawn conducive to opposite conclusions in the minds of reasonable men as to whether or not appellant was a domestic servant of the decedent. There are factors present which would incline some to a very strong and well considered opinion that appellant was not a domestic servant in the usual and ordinary acceptance of that term; while in others the same factors would precipitate an adamant conviction that he was such domestic servant. In the light of that state of the record and under the tremendous volume of judicial declarations forbidding us so to do, we are powerless to disturb the finding of the Board.

Appellant earnestly insists that the record reveals a case of dual employment and that at the time of his accident appellant was engaged in compensable employment. We are not impressed that the facts pre-

sent a situation of dual employment, but we are rather inclined to view the matter as one employment with varying activities.

In this case it was a question of fact for the Board to determine whether or not at the time of the accident appellant was performing services pertaining to his employment as a domestic servant. Before a finding and award will be disturbed upon the evidence it must be of such conclusive character as to force a conclusion contrary to that reached by the Board. The evidence, delineated above, bearing on the question of whether or not decedent was on a business trip at the time of the accident and while appellant was operating the automobile for him is not without dispute and affords conflicting inferences. Therefore, as before stated, the finding of the Board based on such evidence, is conclusive and cannot be disturbed.

In our opinion the award of the full board is not contrary to law and must be affirmed. In so doing, we must not be understood as holding that we would have reversed an award for appellant upon the same evidence.

Award affirmed.

Smith, J., and Ryan, J., not participating.

NOTE.—Reported in 157 N. E. 2d 303.