GILL *v.* JAMES A. GILL & SONS ETC.

[No. 19,204. Filed July 1, 1959. Rehearing denied
September 17, 1959.]

*Robert J. Hyatt*, of Washington and *Armstrong, Gause, Hudson & Kightlinger*, of Indianapolis, for appellant.

*Murray, Mannon, Fairchild & Stewart*, and *Richard W. Guthrie*, both of Indianapolis, for appellee.

RYAN, J.—The appellant, Edward Gill, filed his application for workmen's compensation, alleging that he received personal injuries by reason of an accident arising out of and in the course of his employment.

Appellant was employed as a mortician by appellee, James A. Gill & Sons, a partnership consisting of W. Hayes Gill and James C. Gill.

Trial and hearing were had before a member of the Board, in which appellant was awarded compensation, and appellee filed its application for review by the full Board. The full Board found that the appellant sustained personal injuries by reason of an accident which did not arise out of and in the course of his employment.

Appellant challenges the award of the full Board as being contrary to law.

The evidence discloses that the appellee operated a funeral home in Washington, Indiana, and that the appellant was a mortician employed by appellee. On the night of December 23, 1955, appellant was called to work about 11:00 P.M. and finished his duties at 1:00 A.M. on December 24, 1955. He returned to his home and about 3:00 o'clock in the morning he received a call that someone else had died, so he returned to the funeral home and found that his brother was there. Appellant then testified:

"... And he (the brother) said that he and his boy would go on to the hospital and pick up the body and for me to go ahead and get a cup of coffee and be back so they could take over."

The appellant then got in his car, and on his way to a restaurant was struck by a train.

On direct examination appellee, James C. Gill, testified:

"... When we got to the office Ed drove up and I told him to go ahead and get a cup of coffee, 'so you won't be weak, and Buddy and I will go get Mrs. Allen'."

There was testimony indicating that after the embalmer gets the body and removes it to the mortuary that it is the usual custom for the embalmer to get a sandwich or stimulant before starting work. There was also testimony that such was not the custom and that no stimulant was required before a person could embalm a body and that the practice of eating before embalming depended entirely upon the time of day.

Appellant urges that the accident would not have happened but for his employment, and that food and drink were necessary to the performance of his employment and that therefore he was performing an act beneficial to himself and his employer.

Judge Ax, speaking for this Court, in *Markley* v. *Richmond Glove Corporation* (1959), 129 Ind. App. 325, 156 N. E. 2d 407, 413, has stated the rule as follows:

> "The line of liability upon an employer for workers who have no duties to perform for their employer outside of the job site has been drawn at the employer's premises. The situation is otherwise where the employee has duties to perform away from the job site. This rule provides a definite standard by which liability can be determined."

The instant case falls within this rule unless appellant shows that it comes within the exception to the rule of performing duties of employment away from the job site.

Here the appellant was on his way to get coffee and from the evidence the Board could conclude that such was or was not part of the duties of his employment.

The question of whether or not an injury arises out of and in the course of the employment is a question

of fact. The burden of establishing such fact rests upon the claimant and on appeal we may view only that evidence most favorable to the appellee. *Kinsey* v. *Sheller Manufacturing Corp.* (1955), 125 Ind. App. 493, 499, 126 N. E. 2d 267.

A finding and award will not be disturbed upon the evidence unless it is of such a conclusive nature with all inferences reasonably deducible therefrom as to force a conclusion contrary to that reached by the Board. *U.S. Steel Corp.* v. *Dykes* (1958), 238 Ind. 599, 154 N. E. 2d 111.

The Board having determined that the injuries com plained of did not arise out of and in the course of the employment, we cannot say as a matter of law that on the evidence below we would be forced to reach a contrary conclusion.

In so affirming, however, we point out as said by Judge Kelley of this Court in *Couch* v. *Harmon etc.* (1959), 129 Ind. App. 459, 157 N. E. 2d 303, 306,

"In so doing, we must not be understood as holding that we would have reversed an award for appellant upon the same evidence."

Award affirmed.

Ax and Cooper, JJ., concur. Myers, P. J., dissents.

### DISSENTING OPINION

MYERS, P. J.—I dissent from the opinion of the majority for the reason that I believe the Full Board committed an error at law when it determined that the injuries suffered by appellant did not arise out of and in the course of his employment.

The undisputed facts show that appellant was an employee in appellee's Funeral Home, acting as an em-

balmer. He was subject to call at all times. On the night of December 23, 1955, appellant had worked in the mortuary from 11:00 p.m. until around 1:00 o'clock a.m., when he returned to his home and went to bed. About 3:00 o'clock of the same morning he received a call that some one else had died in the hospital and that his services were needed at the mortuary. After having had only about an hour and a half's rest, appellant dressed himself and drove directly to the Funeral Home. There he found his brother, who, as his employer, told appellant that he and his son would go to the hospital and pick up the body. According to appellant's testimony, the brother then said to appellant:

". . . and for me to go ahead and get a cup of coffee and be back so they could take over."

On direct examination, James C. Gill, the brother, testified as follows:

". . . when we got to the office Ed drove up and I told him to go ahead and get a cup of coffee, *'so you won't be weak,* and Buddy and I will go get Mrs. Allen'." (Our emphasis.)

The nearest restaurant open at that time of the morning was approximately one-half mile away from the mortuary. Appellant got into his automobile and on his way there was struck by a train at a railroad crossing.

There was testimony to the effect that there is a custom among mortuaries that embalmers eat a sandwich or drink a cup of coffee or some other stimulant before starting to work. There was conflicting evidence as to whether or not this was the custom in appellee's mortuary. I do not consider the matter to be of any

importance in this case, as the only question is whether appellant was acting pursuant to his employer's orders and directions.

This is not a case where the appellant committed an act solely for his personal comfort and enjoyment, or an act which was not for the service of his employer, but only incidental thereto. Nor, in my opinion, were his actions in driving to get a cup of coffee a departure from or an abandonment of his job. Appellant had been working until 1:00 o'clock in the morning. He was recalled two hours later. It was pointed out that an embalmer's job requires a certain amount of skill and alertness. Upon being recalled to the mortuary, appellant responded immediately. Upon his arrival, his employer, knowing the short amount of rest that he had had, acted reasonably and in most natural fashion by directing him to refresh himself with a cup of coffee *in order to be prepared to do his job*. It was important to the business that the embalming be done properly. Thus, his brother directed him to get a cup of coffee "so you won't be weak." It was equally as much benefit to the employer-brother as to appellant that the coffee should be consumed by appellant. Consequently, the trip which he undertook to get the coffee was not for his own accommodation or advantage, but was conducive to the proper conduct of his work that early morning.

This is not a case where an employee was coming to or going from work. Appellant was on the premises of the place of his employment, and left them at the express direction of his brother, who was his employer. If an employee is injured while carrying out the reasonable orders of his employer, it makes no difference whether he is on the employer's premises or anywhere near them. Small's Workmen's Compensation Law of

Indiana, ch. VII, §7.7, p. 172. The rule is specifically stated in the case of *Emmons* v. *Wilkerson* (1950), 120 Ind. App. 100, 106, 89 N. E. 2d 296, 299, as follows:

> "There is an exception to the general rule, in that, an employee, while he is performing, or is on his way home after performing, or is on his way from his home to perform some special service or errand, or some duty incidental to the nature of his employment in the interest of, or under the direction of his employer, sustaining an accidental injury, is considered to have suffered an injury arising out of and in the course of his employment."

See, also, 99 C. J. S., Workmen's Compensation, §234d., p. 828.

I am aware that the Board's determination is conclusive as to all questions of fact, and that if it is supported by some competent evidence it should not be disturbed. This court, however, has reversed the Board when it has found from the undisputed facts that there was only one conclusion to be drawn, which was contrary to that of the Board. *Rogers* v. *Rogers* (1919), 70 Ind. App. 659, 122 N. E. 778; *Fleeger* v. *Nicholson Brothers* (1935), 100 Ind. App. 103, 105, 106, 192 N. E. 842, 843. In the latter case this court said as follows:

> "The controlling question before the board is, was Fleeger engaged in the business of his employers at the time of the accident. From the undisputed evidence as shown there is only one result which can be logically reached. We are not unmindful of the rule which permits the Industrial Board to draw inferences from the facts proven, but in face of the testimony, from one of the employers, that Fleeger was on duty at the time of the accident, any other inference than that he was engaged in business of his employers would be illogical and contrary to law."

When we are faced with the testimony of both appellant and appellee to the effect that after appellant had arrived at the mortuary for working purposes, he was directed by his employer to go get some coffee so he wouldn't be "weak," the only reasonable inference that can be drawn is that his employer wanted him to be physically alert and awake to adequately perform the forthcoming embalming job. Thus, the only conclusion that can be arrived at from the undisputed facts is that the injuries suffered by appellant arose out of and in the course of his employment, and that the Board's decision was contrary to law.

NOTE.—Reported in 159 N. E. 2d 734.