P. MICHAEL MILLER *v.* BARRETT, ET AL. d/b/a BARRETT, BARRETT & MCNAGNY.

[No. 1170A192. Filed May 24, 1971. Rehearing denied August 4, 1971. Transfer denied November 30, 1971.]

Leonard E. Eilbacher, Hunt, Suedhoff, Borror & Eilbacher, of Fort Wayne, for appellant.

James V. Donadio, G. Daniel Kelley, Jr., Ice Miller Donadio & Ryan, of Indianapolis, for appellee.

SHARP, J.—This is a review of the negative award by the Industrial Board in a Workman's Compensation Claim. The Board found that "plaintiff sustained personal injuries while on a personal mission of his own, and that said injuries did not arise out of or in the course of his employment with the defendant."

We must examine the factual inferences in the light most favorable to the decision of the Industrial Board. The sole contention of error is that the decision of the Industrial Board in this case was contrary to law.

At the time of the accident in this case on October 22, 1969, the appellant was a salaried attorney employed by the appellee law firm of Barrett, Barrett and McNagny which maintained its law office in the City of Fort Wayne, Indiana. The appellant had been so employed for approximately four years. The defendant firm was composed of eight partners and six associate attorneys, including the appellant. The plaintiff had no prescribed hours but generally worked in the Fort Wayne office approximately 50 to 60 hours per week. The plaintiff was

principally engaged in litigation practice in defending several cases for insurance companies in the State and Federal Courts in Allen County and neighboring counties. In the regular course of his employment the appellant used his own automobile for frequent trips on firm legal business. He was expected to perform generally any work for his employers at any hour. The plaintiff had also worked on occasion in his home in trial preparation, telephone calls and for some client meetings. One of the defendant partners testified that the plaintiff was required by his employer to furnish his own automobile for use in his employers' business. The testimony is undisputed that the plaintiff was reimbursed for his automobile expenses but was not reimbursed for his auto expenses inside Allen County. For a short period of time in 1969 the appellee employer had furnished the plaintiff an automobile when the appellant's automobile was out of order. The plaintiff's home was in Allen County and he was never reimbursed for ordinary trips between his home and the appellees' office in Fort Wayne. The appellant was receiving training in litigation from partners in the firm and was given more and more responsibility. After trial it was customary to have discussions and rehashings as a part of the training program.

On October 22, 1969, the appellant and one of the partners in the defendant firm, Mr. J. Michael O'Hara, were engaged in the defense of a civil damage suit in Allen Superior Court No. 2 in Fort Wayne, Indiana. The case was submitted to the jury for deliberation at approximately 4:00 o'clock P.M. on the afternoon in question. The plaintiff and Mr. O'Hara returned to the firm office in Fort Wayne and remained there until approximately 6:45 P.M. On the suggestion of Mr. O'Hara the two of them went to Mr. O'Hara's private country club, the Orchard Ridge Country Club, to await the jury verdict. The appellant was not a member of the Orchard Ridge Country Club and did not frequent it. The appellant and Mr. O'Hara went from the office of the defendant to the Country Club in their separate and private automobiles. The telephone

number of the club was left with the Court Bailiff by Mr. O'Hara. Mr. O'Hara had express intentions to go to the Country Club, have dinner and relax in preparation for another trial the next day. He expressed his intentions to send the appellant back to the court room alone to take the jury verdict when word was received. They arrived at the Country Club at approximately 7:20 o'clock P.M. and had one and a half or two drinks when a call came reporting that the verdict had been reached. At this point Mr. O'Hara decided to return with the appellant to the court room to receive the verdict. The appellant and Mr. O'Hara drove from the Country Club to the court house in Mr. O'Hara's automobile, leaving the appellant's automobile at the Country Club. The verdict was announced at approximately 8:30 o'clock P.M. and the two left the court room shortly and returned to the Country Club in Mr. O'Hara's automobile. They arrived at the Country Club at approximately 9:30 o'clock P.M. and had another drink or two and were later jointed by the Special Judge who had tried the case. At that time the trial, verdict and certain incidents that occurred during the trial were generally discussed. The appellant excused himself between 11 and 11:15 o'clock P.M. At approximately 11:30 o'clock P.M. the appellant was involved in a serious one car automobile collision on a route between the Country Club and home, resulting in amnesia which blotted out his memory of the accident and certain events preceding it. The Country Club is located southwest of and outside the City of Fort Wayne and the appellant resided on the west side of the City of Fort Wayne. In traveling between the firm's office in downtown Fort Wayne and his home the appellant's usual route was U.S. Highway 24, a major dual lane thoroughfare running generally west to southwesterly, a distance of three or four miles. The Country Club was located southwest of the city about eight miles from the firm's office. The distance between the employer's club outside the city and the appellant's home is about four miles and is reached by a curving narrow road through rural and semi-

rural areas. At the place of the accident, the road curved and was very narrow and was just wide enough for two cars to pass.

There was extensive evidence in regard to the nature and circumstances of the appellant's employment. It was indicated by one of the partners that the appellant and other associates were treated as professional men and were not clock-worker employees and were given a good deal of freedom. (It might be emphasized that in the appellees' brief there is contained ten pages of corrections and additions to the appellant's statement of the case. These corrections and additions are expressly accepted by the appellant in his reply brief).

The correct standard for review by this court which is applicable here was stated in *Moore* v. *L. O. Gates Chevrolet, Inc.* (1967), 140 Ind. App. 672, 225 N. E. 2d 854, 855, as follows:

> "This being a negative finding against the Appellants, who had the burden of proof, the question to be decided is whether the evidence entitles Appellants to the relief which was denied them by the Award. Shaffer v. Indiana Gas Chemical Corporation (1965), 137 Ind. App. 471, 209 N. E. 2d 919.
>
> The Award of the Board cannot be set aside in this case unless all the evidence is undisputed and not contradicted and leads inescapably to the sole conclusion that the Appellant was entitled to an Award under our Workman's Compensation Act. Wright v. Peabody Coal Co. (1948), 225 Ind. 679, 686, 77 N. E. 2d 116."

See also, *LeMasters* v. *Evansville-Vanderburgh Co. Air A. Dist.* (1970), 147 Ind. App. 674, 263 N. E. 2d 301; *B.P.O. Elks #209* v. *Sponholtz* (1969), 144 Ind. App. 150, 244 N. E. 2d 923; *Lockwood* v. *Speedway Methodist Church* (1969), 144 Ind. 430, 246 N. E. 2d 774; *Weeks* v. *Wa-Nee Community Schools* (1969), 145 Ind. App. 157, 250 N. E. 2d 258 and *Tichenor* v. *Bryant Lumber Co.* (1970), 147 Ind. App. 382, 261 N. E. 78.

The case relied upon principally by the Appellant is the

decision by our Supreme Court in *Marshall* v. *Tribune-Star Pub. Co.* (1968), 142 Ind. 556, 243 N. E. 2d 761, 762, where our court stated:

> "It is the well-established law of this State that in reviewing the sufficiency of the evidence to support findings of fact made by an administrative agency, this Court will only overturn an agency finding if it appears that the evidence upon which the agency acted was devoid of probative value, or so meager as to lead to the conviction that the finding does not rest upon a rational basis, or where it appears that the result of the hearing must have been influenced by improper considerations. Warren v. Indiana Telephone Co. (1940), 217 Ind. 93, 26 N. E. 2d 399.
>
> In the case at bar, we believe that despite this stringent rule it was necessary for the Appellate Court to reverse the award of the Industrial Board. Even when the evidence is viewed most favorably in all respects to the award made by the Full Board, together with all reasonable and logical inferences to be drawn therefrom, it nevertheless appears from the uncontroverted evidence of petitioner's own witnesses that the decedent was required to use his automobile to carry out the duties of his employment . . ."

Since the *Marshall* case is the only case cited by the Appellant in which both the Appellate and Supreme Courts reversed the Industrial Board's denial of a claim on the basis that the unrebutted evidence demonstrated that the claimant-employee's use of his personal automobile was an integral part of his work, it must be distinguished. However, a careful examination of the Marshall case indicates that the facts in this case do not lead to the sole conclusion that the claimant-employee's use of his personal automobile was an integral part of his work at the time and place in question. In *Marshall* it was the employee's duty as a part of his employment and basically *his sole duty* to deliver bundles of morning papers to various dropoff points using his own automobile. He was paid a regular car allowance in addition to his salary. At the time of the accident in *Marshall* the claimant-employee was returning either to his home or to another place of employment (by another employer) from performing these duties of

delivering bundles of papers when the accident in question occurred. The facts in Marshall are distinguishable from those in the instant case. In the instant case the employee was not returning to his employment. Furthermore, there was clearly a dispute in the facts as to whether or not the appellant Miller's use of the automobile was an integral part of the employment. While the appellant's argument on this point may be persuasive we must remember the recent statement of this court in *LeMasters* v. *Evansville-Vanderburgh Co. Air A. Dist.* (1970), 147 Ind. App. —, where this court stated:

> "To be sure, the Industrial Board might well have adopted appellant's interpretation of the facts but the Board was not compelled as a matter of law to do so. The contrary interpretation of the facts is equally appropriate. It is reasonable to conclude, as did the Industrial Board, from the totality of the circumstances, accompanied by all proper inferences, that the decedent was not fatally injured in an accident arising out of and in the course of his employment." 263 N. E. 2d at 303.

As a general rule, accidents occurring on the way to or from a place of employment are not compensable because they do not arise out of and in the course of employment. There are exceptions to this rule. One such exception is where the transportation to or from work is furnished by the employer. See *Stadler Fert. Co.* v. *Bennett* (1954), 124 Ind. App. 524, 119 N. E. 2d 26.

Where an employer requires the employee to use his own automobile in the furtherance of his employment, injuries to the employee incurred while transporting his vehicle to or from the site of employment are compensable. See *Pittsburgh Testing Laboratories* v. *Kiel* (1960), 130 Ind. App. 598, 167 N. E. 2d 604.

Appellant cites *Burger Chef Systems, Inc.* v. *Wilson* (1970), 147 Ind. App. 556, 262 N. E. 2d 660 and *Kariger Motors* v. *Kariger, et al.* (1961), 132 Ind. App. 85, 173 N. E. 2d 916 as supporting the rule that accidents and injuries are subject to arise out of employment where there is

"an incidental connection" between the employment and the injuries. These cases do accurately state the general rule. However, these cases do not hold that where an employee is on a personal mission seeking the pursuit of pleasure, that there is an incidental connection with his employment. Both cases merely affirm the award of the Industrial Board with the court holding that it was an issue of fact for the Board to determine whether or not there was such an incidental connection. In the instant case the Board could have determined from the facts that there was such an incidental connection but we do not believe that it was bound to do so under all of the facts in this case as a matter of law.

The Appellant further cites *Noe, et al.* v. *Fargo Insulation Co.* (1965), 139 Ind. App. 151, 204 N. E. 2d 883, where the court spoke of the real test between whether or not the employee at the time of his injuries was subject to the power and control of employer. Appellant then suggest that since the travel to the Country Club was at the "instance" and "direction" of the employer, that he was under the control and direction of his employer when at the club.

In *Gill* v. *James A. Gill & Sons, etc.* (1959), 130 Ind. App. 1, 159 N. E. 2d 734, the claimant, an embalmer, had been called upon to return to the funeral home and do further work. When he arrived his employer told him to go ahead and get a cup of coffee. The claimant contended that the injuries that he received in an accident while he was on the way to the restaurant to get a cup of coffee and was struck by a train arose out of and within the course of his employment. However, the Appellate Court affirmed the Board's denial of the claim. Likewise in the case of *Rohlwing* v. *The Wm. H. Block Co.* (1963), 124 Ind. App. 97, 115 N. E. 2d 450, this court noted that the evidence as to the claimant's authority to entertain out of town suppliers was disputed even though the claimant testified that she was doing this under the direction of her employer and affirmed the Industrial Board's denial of compensation.

In *Mitchell* v. *Ball Bros. Co.* (1933), 97 Ind. App. 642, 186 N. E. 900, it was held that although the claimant-decedent had been subject to a call from the time he reported to work until the time he reported out and that he was subject to call even during lunch hour and where he received injuries while return to the place of employment from his lunch hour there was no incidental connection between his employment and injuries since he was not returning to work due to a call. The court noted that had he been called from the restaurant and was going to a particular place to perform duties then he would have been on his work. However, that was not the case and the court affirmed the denial of the claim by the Industrial Board.

In *Emmons* v. *Wilkerson* (1949), 120 Ind. App. 100, 89 N. E. 2d 296, claimant had attended a sales meeting at his employer's place of business in the evening and was involved in an accident while returning to his home. This court affirmed the denial of compensability, holding that based on the evidence it was up to the Board to determine whether or not the injury and accident which occurred on claimant's homeward route after the sales meeting arose out of and in the course of employment.

In further attempt to place the appellant Miller's trip from the Country Club within the course of his employment the appellant cites a number of cases under the continuity of service doctrine which has risen under the Indiana Workmen's Compensation Act. These cases cited by the appellant are *Williams* v. *School City of Winchester* (1937), 104 Ind. App. 83, 10 N. E. 2d 314 and *Livers* v. *Graham Glass Co.* (1931), 95 Ind. App. 358, 177 N. E. 359. *Williams* as School Superintendent was traveling to another town to attend a school meeting and it was clear at the time of the particular accident the Superintendent was furthering the business of the employer. In *Livers* a factory superintendent was involved in an accident on his way to the plant in the evening to make a checkup. The continuity of service doctrine normally involves an employee

who is required to leave his home for a period of time and sleep overnight in other cities. For instance, see *C & E Trucking Corp.* v. *Stahl* (1963), 135 Ind. App. 600, 181 N. E. 2d 21. In *Emmons* v. *Wilkerson* (1949), 120 Ind. App. 100, 89 N. E. 2d 296, 298-99, the court stated:

> "*An accident occurring while an employee is going to or returning from his place of employment,* or which occurs while the employee is engaged on a personal mission or errand, not connected with the duties of his employment, is not within the protection afforded employees by the Indiana Workmen's Compensation Act." (Emphasis added)

The Appellant further cites *Pittsburgh Testing Laboratory* v. *Kiel* (1960), 130 Ind. App. 598, 167 N. E. 2d 604 and *Stadler Fertilizer Co.* v. *Bennett* (1954), 124 Ind. App. 524, 119 N. E. 2d 26, to sustain its contention that the plaintiff-employee's automobile was an integral part of his employment.

From the case law cited by the Appellant it is clear that the determination as to whether or not the use of an automobile by an employee is an integral aspect of his employment or whether the employee was actually furnishing transportation for the employer are questions of fact normally to be determined by the Industrial Board. For instance, in the *Pittsburgh Testing Laboratories* v. *Kiel case* this court was affirming an award by the Board in favor of the plaintiff for injuries he received in an automobile accident on his return to his home. As such it is clearly distinguishable from the facts in this case where this court is being requested by the appellant to reverse such a decision by the Industrial Board. Additionally, the claimant in *Pittsburgh Testing Laboratories* had to split his time between two different jobs and he received a travel allowance between the job sites of seven cents a mile. There was also conflicting evidence as to whether or not the claimant received a travel allowance for his travel from his home to work and back to his home. This court found that the evidence was sufficient to support

a finding that the use of the plaintiff's automobile was an integral part of his employment so that the injuries received while taking it to and from work were compensable. It is also important to note that this court distinguished *Emmons, supra,* on the basis that the Appellate Court in *Emmons, supra,* was affirming a ruling of the Board adverse to the claimant. Both holdings are subject to the principle that the finding of the Industrial Board can only be reversed upon unrebutted evidence showing to the contrary.

In *Marshall* v. *Tribune-Star Pub. Co.,* this court and the Supreme Court did reverse the Board's denial of the claim on the basis that the unrebutted evidence demonstrated that the claimant-employee's use of his personal automobile was an integral part of his work. The undisputed facts in *Marshall* were that the employee was allowed a car allowance in addition to his salary. It was the employee's duty as a part of his employment and basically his sole duty to deliver bundles of the morning papers at various dropoff points using his own automobile. He was returning either to his home or to another place of employment (by another employer) from performing these duties when the accident in question occurred. The facts in *Marshall* are distinguishable from the facts in this case. There is a dispute in the facts here as to whether or not appellant Miller's use of his automobile was an integral part of his employment. On the day in question, the Industrial Board could have found that he did not use his automobile in his employer's business and was not reimbursed between the office and his home. The Industrial Board could have found as a matter of fact that because of the nature of his employment the use of the automobile was incidental to the performance of his work as an attorney, and not an integral aspect thereof which makes this case clearly distinguishable from *Marshall* v. *Tribune-Star Pub. Co.*

*Pittsburgh Testing Laboratories* and *Emmons* v. *Wilkerson* both indicate that there are normally questions of fact to be determined by the Industrial Board. There is evidence from

which the Board could have determined that the Appellant was on a personal mission at the time of his accident, that the use of the automobile was not an integral part of his employment and that he was traveling between his home and place of employment and not within the course of his employment at the time of the accident.

Counsel for both parties have filed excellent and persuasive briefs, which have been most helpful to the court. The argument of the appellant would be very persuasive to us if we were sitting as members of the Industrial Board. However, we cannot find in the appellant's argument circumstances justifying the reversal of the decision of the Industrial Board as a matter of law.

Therefore, the award of the Industrial Board should be affirmed.

Hoffman, C.J., Sullivan, P.J., and Lowdermilk, J., concur.

PER CURIAM.—This case is before this court for review of an award of the full Industrial Board of Indiana pursuant to the "appeal" provisions of IC 1971, 22-3-4-8, formerly Indiana Acts 1929, ch. 172, § 61, being also Indiana Statutes Annotated (Burns' 1965 Repl.), § 40-1512. Sharp, J., Hoffman, C.J., Sullivan, P.J., and Lowdermilk, J., are of the opinion that the award should be affirmed. White, J., Buchanan, J., Robertson, J. and Staton, J. are of the opinion that the case should be remanded to the Industrial Board for a finding of facts.

Therefore, by reason of the even division of the judges, the award of the Industrial Board is affirmed. *Ball Brothers Company, Inc.* v. *Review Board of the Indiana Employment Security Division* (1960), 240 Ind. 582, 167 N. E. 2d 469; *State ex rel. M.T.A.* v. *Indiana Revenue Board* (1969), 251 Ind. 607, 244 N. E. 2d 111; Indiana Rules of Procedure, Rule AP 15 (E).

Award affirmed.

## DISSENTING OPINION

WHITE, J.—We are unable to concur in the opinion written by Judge Sharp for our brethren because it impliedly holds that the Industrial Board has made a "finding of the facts on which . . . [its award] is based", as required by section 60 of the Workmen's Compensation Act.[1] We hold that in one of its so-called findings it has merely stated a conclusion of law. That 'finding' is:

"That . . . the plaintiff sustained personal injuries while on a personal mission of his own, and that the said injury did not arise out of or in the course of his employment. . . ."

Since that "finding" is so similar to its counterpart in *Block* v. *Fruehauf Trailer Division* (146 Ind. App. 70, 1969), 252 N. E. 2d 612, 19 Ind. Dec. 489, much of what was said in the dissenting opinion in that case expresses our view of this case.

We concede that the case at bar may be distinguished from *Block* (and from most cases) in that here we find no dispute or contradiction in the evidence. But, as was said in the *Block* dissent:

"Even in those cases in which the 'undisputed evidence' seems to us to establish essential facts which the Board has failed to find, we are not at liberty to assume such facts in deciding whether the award is contrary to law. Such was the holding in *Cole* v. *Sheehan Constr. Co.* (1944), 222 Ind. 274, 280, 53 N. E. 2d 172, wherein the Supreme Court said:
" 'The Appellate Court found that the undisputed evidence produced by the appellant established that she and the decedent were husband and wife and they were living apart at the time of his death for their own convenience. The court concluded that, as a consequence, the appellant was entitled to compensation. *Cole* v. *Sheehan Construction Co.* (1943), 51 N. E. 2d 391. It is immaterial which party produced the evidence and it does not necessarily follow that there was no conflict in the evidence merely because the testimony was undisputed. A conflict may

1. IC 1971, 22-3-4-7, Ind. Acts 1929, Ch. 172, s. 60, as amended by Ind. Acts 1969, Ch. 94, s. 6, also Burns Ind. Ind. Stat. Ann. § 40-1511.

arise out of the testimony of a single witness, though it is not disputed by any other testimony. *McKee* v. *Mutual Life Ins. Co.* (1943), *ante* p. 10, 51 N. E. 2d 474. Since the full board made no finding as to some of the material issues the problem presented is not that of determining whether there is some evidence tending to support an award. *We think, therefore, that it was an invasion of the province of the full board for the Appellate Court to undertake to find the ultimate facts* in the first instance. The statute does not contemplate that the functions of the Industrial Board may be assumed by the courts. The better practice would appear to be to remand the proceeding to the board with directions for it to discharge its statutory duty by finding the essential facts, and by entering an award based thereon.' (Emphasis added.)" 252 N. E. 2d at 624, 19 Ind. Dec. at 505.

What Judge Sharp has so ably done in his painstakingly detailed analysis of the evidence illustrates the vice inherent in permitting the Industrial Board to shirk its duty to find the facts. For notwithstanding all the valuable time spent at the judicial review level (in doing what the statute says should be done at the administrative review level) we still do not know on what ultimate facts the board based its decision. We know only the evidentiary facts. To fill the void left by the board's failure to state its findings we *presume* that the board drew those inferences and made those findings which are "right" to support the legal conclusion it reached.

What this court does then, when it reviews an Industrial Board decision, is not to review what the board *actually did*, but to review what it *might have done*. In effect, we review the hypothetical findings of a hypothetical board—an ideal board which always draws from the evidence the inference most favorable to the conclusion of law which is its decision. If this hypothetical board ever commits error it must be the mistake of failing to know what evidence it heard; for we insure that it can never err as to the law because we find for it (by presumption) facts which fit only the right rules of law. And so we reverse only when the evidence is insuf-

ficient to sustain findings essential to the conclusion (i.e., decision).

The constitutional due process (i.e., the fairness) of any remedial statute which provides for administrative adjudication of justiciable controversies rests on its provisions for judicial review.[2] The Indiana Supreme Court has repeatedly said that a finding of fact by the administrative agency is essential to that review, if the decision is to be intelligently reviewed. "The findings of fact must be specific enough to enable the court to review *intelligently* the Commission's decision."[3] (Our emphasis.) " 'In no other way would it be possible for this court to review the decree intelligently and to determine whether the decree should be affirmed, reversed, or modified.' "[4]

We should follow the mandate of *Cole* v. *Sheehan Construction Co., supra,* and remand this proceeding to the Industrial Board with directions for it to discharge its statutory duty

2. "It is correct to say that the orders of an administrative body are subject to judicial review; and that they must be so to meet the requirements of due process. Such review is necessary to the end that there may be an adjudication by a court of competent jurisdiction that the agency has acted within the scope of its powers; that substantial evidence supports the factual conclusions; and that its determination comports with the law applicable to the facts found. The provisions of the Compensation Act for a so-called appeal to the Appellate Court, whereby that tribunal is authorized so say whether the finding of facts made by the board and the award entered thereon are contrary to law, supplies every requirement of due process. In other words, when the Industrial Board has made a special finding of facts and entered an order or award, and the Appellate Court has considered whether the award is contrary to law, every essential element of due process has been met and the complaining party has had his day in court." *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 105, 26 N.E. 2d 399, 404

3. *Wabash Valley Coach Co.* v. *Arrow Coach Lines, Inc.* (1950), 228 Ind. 609, 613, 94 N.E. 2d 753, 754, as quoted in *Carlton* v. *Board of Zoning Appeals* (1969), 252 Ind. 56, 245 N.E. 2d 337, 343, 16 Ind. Dec. 704, 711.

4. *Dodge* v. *Barstow Stove Co.* (1917), 40 R.I. 191, 100 A 245, as quoted in *Cole* v. *Sheehan Construction Co.* (1944), 222 Ind. 244, 281, 53 N.E. 2d 172, 175, in which the Supreme Court pointed out that in Rhode Island, "the facts in compensation cases are determined by certain courts, instead of by an administrative agency."

by finding the essential facts and by entering an award based thereon.[5]

Buchanan, Robertson, and Staton, JJ., concur.

NOTE.—Reported in 269 N. E. 2d 772.

---

5. See also *Stoner* v. *Howard Sober, Inc.* (1954), 124 Ind. App. 581, 586, 118 N.E. 2d 504, 507, in which we remanded to the Industrial Board because "the finding 'that plaintiff is not a dependent within the meaning of the Workmen's Compensation Law of the State of Indiana' is clearly a conclusive of law and not a finding of fact, as such determination requires *an application of abstract principles of law to the facts as the are found to exist.*" (My italics).