## PAUL J. CAHILL'S CASE.

Worcester.    September 22, 1936. — October 28, 1936.

Present: RUGG, C.J., CROSBY, FIELD, DONAHUE, & LUMMUS, JJ.

*Workmen's Compensation Act*, Findings by Industrial Accident Board,
Injuries to which act applies. *Contract*, Of employment. *Proximate
Cause*.

This court determined a case under the workmen's compensation act on
the basis of a general finding by the Industrial Accident Board which
was warranted by the evidence and consistent with the few specific
findings made, although the general finding was not warranted on the
specific findings alone and the board had not complied with its duty
of making sufficient specific findings.

An injury received by one employed by an insurance company as an ad-
juster and investigator when he wrenched his knee as he was getting
out of his own automobile in the evening at his home, to which he
had returned from work for the purpose of further work for his em-
ployer, properly could be found to have been an injury received in
the course of his employment and arising out of it within G. L. (Ter.
Ed.) c. 152, § 26, where it appeared that his duties to his employer
required the use of the automobile and caused him to do evening
work at his home.

CERTIFICATION to the Superior Court under the work-
men's compensation act of a decision by the Industrial
Accident Board awarding compensation.

In the Superior Court, a decree in accordance with the
board's decision was entered by order of *Whiting*, J. The
insurer appealed.

*M. J. Rubin*, (*J. C. McDonald* with him,) for the insurer.
*J. Joseph MacCarthy*, for the claimant.

FIELD, J. This is a workmen's compensation case. G. L.
(Ter. Ed.) c. 152. The single member found that "the em-
ployee, who, as an adjustor and investigator for an insur-
ance company, was on call at any hour of the day or night,
did sustain an injury when getting out of his car" as a result
of which he was incapacitated, that "this injury arose out
of and in the course of his employment," and that "he is

entitled to compensation." The board affirmed and adopted the findings and decision of the single member. In the Superior Court a decree was entered ordering payment of compensation. From this decree the insurer appealed.

The decree was right.

The question presented for our determination is whether the finding of the Industrial Accident Board that the injury sustained by the employee "arose out of and in the course of his employment" is supported by the record.

A mere general finding in the terms of the statute that the employee's injury "arose out of and in the course of his employment" "is not a compliance with the intention of the Legislature as expressed in the workmen's compensation act." See G. L. (Ter. Ed.) c. 152, §§ 8, 10. Ordinarily it is "the duty of the Industrial Accident Board to make such specific and definite findings upon the evidence reported" as will "enable this court to determine whether the general finding should stand." The evidence, however, may be of such a character that specific and detailed findings of fact are not required. *Mathewson's Case*, 227 Mass. 470, 473–474. See also *Madden's Case*, 222 Mass. 487; *Rozek's Case*, 294 Mass. 205, 207. In the present case a general finding substantially in the terms of the statute was made. But the only specific findings bearing thereon were that the employee was "an adjustor and investigator for an insurance company, was on call at any hour of the day or night" and sustained an injury "when getting out of his car." These specific findings were warranted by the evidence, but standing alone were insufficient to support the general finding. However, they go so far toward showing the view of the facts taken by the Industrial Accident Board that we think the general finding cannot be held to be unsupported, if such general finding is consistent with the specific findings and warranted by the evidence, though additional subsidiary facts essential to support the general finding were not specifically found. The rights of the employee should not be jeopardized by the failure of the Industrial Accident Board to make more specific and detailed findings of subsidiary facts. And the insurer does not contend that its rights are jeop-

ardized by such failure. See *Mathewson's Case*, 227 Mass. 470, 474; *Gillard's Case*, 244 Mass. 47, 56.

The general finding that the employee's injury "arose out of and in the course of his employment" is consistent with the specific findings and warranted by the evidence.

There was testimony by the employee to these facts: At the time of his injury the employee, who lived in Worcester, was employed as an adjuster and investigator on a yearly salary by an insurance company having its main office in Boston. The employee's territory included Worcester County and parts of Middlesex, Franklin and Norfolk counties. He had an office in Worcester, the rent of which was paid by the company, at which he spent "an hour to an hour and a half on Tuesday and Thursday mornings and Saturday." He also used his home for the transaction of business. The company did not pay the rent of his home or of his garage or for the telephone in his home. "As part of his duties he is required to own an automobile. He is paid five cents a mile by the company for the use of the automobile." Records of cases are mailed to his home from Boston. It was a part of his "duty to go out during the day and interview witnesses and talk to claimants. He then comes home and dictates on the dictaphone." "The dictaphone belonged to the company." "Besides dictating . . . [the employee] writes letters, makes out reports and answers telephone calls that come in during the day when he has been out. . . . an adjustor's work is never done, he is on call twenty-four hours a day." He "does night work from his home in connection with the investigation of a case. He receives calls at his home from the company, claimants and witnesses. As a result of the calls he does night work from his home. He departs from his home at night after the usual working hours for the purpose of investigating." "Nine tenths of . . . [the employee's] work is outside."

On the day the employee was injured "he had been to Fitchburg and Gardner on the company's business. He left at nine o'clock in the morning. The accident happened at six o'clock at night in the driveway of his home in front of the garage. He was returning from work in Gardner and

Fitchburg." He "was going home to dictate information he had gathered on cases during the day, to answer telephone calls that may have come in and he was going out again at night to locate a couple of witnesses on a case before the Industrial Accident Board." "He drove his car off the public highway when he got home . . . " He "drove in his driveway, stopped at the back steps aside the back door, opened the left door of his car and was getting out, he was part way in and part way out of the car with his left foot on the ground of the driveway when he wrenched and twisted his left knee. He had a sharp pain in his left knee as a result." (He "got out of his car for the purpose of opening the garage doors to drive his car into the garage. . . . he always leaves his car in the garage when he is at home with the doors open.") "He limped up to the garage doors, opened them, limped back again and got into his car; he drove his car into the garage; he limped into his house leaving the garage doors open. He had severe pain and did not go out that night as he had planned to do. He did some dictating and answered a couple of telephone calls. That is all he did that night."

G. L. (Ter. Ed.) c. 152, § 26, which provides for compensation to an employee who "receives a personal injury arising out of and in the course of his employment" further provides — by a provision added to the General Laws by St. 1930, c. 205, changing the law previously in force, see *Schofield's Case*, 272 Mass. 229; *Manley's Case*, 280 Mass. 331, 334–335 — that for "the purposes of this section, any person while operating or using a motor or other vehicle, whether or not belonging to his employer, with his employer's general authorization or approval, in the performance of work in connection with the business affairs or undertakings of his employer . . . who . . . receives a personal injury, shall be conclusively presumed to be an employee." Clearly it could have been found that the employee in this case in alighting from his automobile at his home on his return from a journey was "using" such automobile. Whether it could have been found that he was "operating" the automobile need not be decided. See, however, *Cook* v. *Crowell*, 273

Mass. 356; *Di Cecca* v. *Bucci*, 278 Mass. 15. It could have been found also that the journey from which the employee was returning to his home when he received the injury was "the performance of work in connection with the business affairs or undertakings of his employer" for which the employee was employed, that use by the employee of his own automobile in the performance of such work was "with his employer's general authorization or approval" by agreement between the employee and the employer, that the performance of such work included transportation of the employee to his home by his own automobile — particularly since it could have been found that the employee was returning home to perform further work for his employer — and that such transportation had not come to an end when the employee received an injury in alighting from his automobile. On such warrantable findings, if made, the employee, by force of the provision of G. L. (Ter. Ed.) c. 152, § 26, above quoted, was conclusively presumed to stand toward the insurance company in the relation of an employee, and not of an independent contractor, in the use and operation of the automobile, and the general finding that the injury received by the employee arose "in the course of his employment" was at least warranted. *Donovan's Case,* 217 Mass. 76. *Vogel's Case,* 257 Mass. 3, 4–5. *Mannix's Case,* 264 Mass. 584. *Campbell's Case,* 288 Mass. 529, 532. *Milliman's Case, ante,* 451. The fact that the employee's injury was received on his own premises does not necessarily preclude such a general finding. It could have been found that he was still engaged in the performance of the duties of his employment, though on his own premises. Nor was this general finding precluded by the employee's testimony, binding upon him, that he alighted from the automobile for the purpose of driving it into the garage. His alighting from the automobile at his home was not necessarily solely incidental to his putting the automobile in the garage. Whether an injury received by him after he had alighted from the automobile at his home, and while he was engaged in putting the automobile in the garage,

could be found to have arisen "in the course of his employment" need not be decided. That is not this case.

Furthermore, it could have been found that the employee's injury arose "out of . . . his employment," that is, that there was a causal relation between his employment and the injury. It could have been found that the employee's injury received in alighting from the automobile resulted from the use of such automobile as "an appliance of the employer's business which the . . . [employee] was using in the employer's behalf." *Mannix's Case*, 264 Mass. 584, 585. And it could have been found that the danger of such injury resulting to the employee was not a risk common to travellers but was a special risk of the employment. It could have been found that the use by the employee of an automobile for purposes of travel in the performance of the duties of his employment, including its use on the employee's premises as here shown, constituted a substantial part of such duties as fixed by the contract of employment, and that for this reason the danger incidental to such use was "peculiar to the work," and the injury received could "be said reasonably to have been contemplated as the result of the exposure of the employment." Compare *Hewitt's Case*, 225 Mass. 1, 3. The case closely resembles cases in which transportation of an employee by his employer under an express or an implied contract for such transportation creates a risk of danger, even on the highway, peculiar to the employment. See *Donovan's Case*, 217 Mass. 76; *Gilbert's Case*, 253 Mass. 538; *Vogel's Case*, 257 Mass. 3; *Johnson's Case*, 258 Mass. 489. See also *Keaney's Case*, 232 Mass. 532; *Mannix's Case*, 264 Mass. 584; *Milliman's Case*, 295 Mass. 451.

In view of the grounds upon which the decision rests it is unnecessary to discuss the statute providing for compensation for an injury "arising out of an ordinary risk of the street." See G. L. (Ter. Ed.) c. 152, § 26.

*Decree affirmed.*