289 N.E.2d 737 (1972)
TRANSPORT MOTOR EXPRESS, INC., Appellant (Defendant below),
v.
Delores J. SMITH et al., Appellees, (Plaintiffs below), and Riss & Company, Inc., Appellee, (Defendant below).
No. 771A136.
Court of Appeals of Indiana, Second District.
December 4, 1972.
Rehearing Denied January 10, 1973.
*739 T.E. Cunningham, John T. Rocap, Indianapolis, Rocap, Rocap, Reese & Young, Indianapolis, of counsel, for defendant-appellant.
F. Boyd Hovde, W. Scott Montross, Indianapolis, of counsel, Townsend, Hovde & Townsend, Indianapolis, for plaintiffs-appellees.
Steckbeck & Moore, David A. Steckbeck, William C. Moore, Indianapolis, for defendant-appellee Riss & Co., Inc.
PER CURIAM.
The Industrial Board entered an award ordering that the individual appellees, plaintiffs below (plaintiffs-appellees) as dependents of James Willard Jessee (decedent), recover compensation and burial expenses from appellant, defendant below, Transport Motor Express, Inc. (TMX) and appellee Riss & Company, Inc. (Riss), also a defendant below.
The basic issue is whether the award is contrary to law in holding TMX liable as a co-employer (with Riss).[1] There is *740 no dispute here (and apparently there was no dispute before the Board) as to dependency, average weekly wage, fatal injury by accident arising out of and in the course of employment, or other ultimate facts essential to a recovery of compensation from decedent's employer or employers whoever they may be.
The subsidiary issue to which this opinion is devoted is essentially the same as that to which we addressed our prior opinion in this same case (Transport Motor Express, Inc. v. Smith [1972], Ind. App., 279 N.E.2d 262, 29 Ind.Dec. 417): Is the Industrial Board's finding of facts with respect to holding TMX to be an employer, specific enough to enable us to make an intelligent review of the Board's decision? That prior opinion directed the Board "to certify to the Court ... the finding of facts on which its award is based, said finding being made specific enough to permit this court intelligently to review said award." The Board has now certified to us a more detailed finding which, as we shall attempt herein to explain, lacks the requisite specificity in the area of the dispute which the award resolves.
We summarize this latest finding as follows (adding for background understanding a few undisputed facts gleaned from the briefs and the record):
Decedent was a resident of Texas who worked out of Riss' Dallas, Texas, terminal as an over-the-road driver for Riss, whose principal office was in Kansas City, Missouri. While decedent was at McAllister, Oklahoma on February 3, 1967, (apparently in the course of his work as a driver for Riss) a cargo of bombs became available to be transported from Crane Naval Depot at Crane, Indiana, to some point in the far west. Riss instructed decedent to drive (in a tractor permanently leased by J & H Leasing Corp. to Riss) to Terre Haute, Indiana. On arriving at Terre Haute decedent reported to the TMX terminal where he entered into a trip lease of himself and his equipment to TMX. (This lease seems to have been entered into because as the Board found, Riss "had no Interstate Commerce Commission or Public Service Commission authority to carry explosives in Indiana or between Crane, Indiana, and Joliet, Illinois", while TMX did have.) Upon execution of the trip lease TMX furnished decedent placards which were placed in the tractor he was driving. Those placards showed TMX as the lessee of the equipment and displayed the ICC and PSC numbers and the authority of TMX. The "trip" contemplated in the lease was apparently from Terre Haute to Crane to Joliet, Illinois. The decedent then drove the tractor he had thus leased from Terre Haute to Crane and picked up a load of explosives. While enroute from Crane to Joliet with that load, and before the trip called for by the lease had been completed, decedent, on February 7, 1967, sustained the accidental injury from which he died that same day.
The Board also found:
"While operating under the said trip lease, James Willard Jessee was required by Transport Motor Express, Inc. to follow a prescribed route of travel and to keep a log of his activities which was furnished to Transport Motor Express, Inc.
"During the trip lease, Transport Motor Express, Inc. had the right to stop the driver and equipment and to require replacement of either the driver or equipment for violation of ICC or PSCI rules and regulations."
The present action was commenced before the Industrial Board of Indiana in February of 1969. The Board found, however, that prior thereto:
"Plaintiff, Delores Ann Jessee individually and on behalf of her minor children, James Michael Jessee, Gina Renee Jessee and Kenneth Wayne Jessee, entered into a compromise settlement agreement in Texas with Riss & Company, Inc. by and through its insurer, Security Mutual Casualty Company, *741 whereby Riss & Company, Inc., paid Delores Ann Jessee the sum of $5200.04 on her own behalf, plus $500.00 for reimbursement of funeral expenses, and $5515.04 for and on behalf of the minor children, said compromise having been approved by the Industrial Accident Board of the State of Texas on July 14, 1967, Cause No. F62408, Claim No. 97229.
"The liability of defendant Transport Motor Express, Inc. to plaintiffs was not an issue in the proceedings hereinbefore described and such liability was not adjudicated by that proceeding.
"At the time of the injuries causing his death on February 7, 1967, decedent James Willard Jessee was an employee of both Transport Motor Express, Inc. and Riss & Company, Inc., and he was within the scope and course of his said employment.
"Both defendants should pay in equal portions the statutory funeral expense up to the maximum $750.00.
"Plaintiffs are entitled to a recovery against defendants, and each of them, on plaintiffs' Form 10 application filed February 5, 1969.
"Defendant Riss & Company is entitled to a credit against its liability hereunder for the sums it paid plaintiffs pursuant to the order of the Industrial Accident Board of the State of Texas described in a previous finding hereof."
In most of the cases in which the Appellate Court of Indiana has reviewed decisions of the Industrial Board of Indiana during the half-century between creation of the Board and replacement of the Appellate Court by the Court of Appeals, relatively little attention was paid to the statutory requirement that an appealable award (i.e., an award made by the full board after review of a hearing member's award) must be filed "with the finding of the facts on which it is based."[2] But following Carlton v. Board of Zoning Appeals (1969), 252 Ind. 56, 245 N.E.2d 337, 16 Ind. Dec. 704, some Appellate Court judges began to express the view that specific findings should be required. See Block v. Fruehauf Trailer Division (1969), 146 Ind. App. 70, 252 N.E.2d 612, 19 Ind.Dec. 489; Miller v. Barrett (1971), Ind. App., 269 N.E.2d 772, 25 Ind.Dec. 547. Since the advent of the Court of Appeals, January 1, 1972, its Second District has directed the Industrial Board in several cases[3], including this one, to make further findings of fact "specific enough to permit this court intelligently to review said award."[4] Yet we have obviously failed to be specific enough ourselves (at least in this case) to enable the Board to understand what is needed. We shall here attempt to correct that error.
The foundation on which we build our attempt is summarized in the following excerpts from the authoritative works of three widely acclaimed experts in the field. These quotations, incidentally, demonstrate that the requirement of specificity in administrative findings of fact is not an invention of the current personnel of this court or the Supreme Court. Dean Small several years ago commented on Industrial Board findings thus (citations omitted):
"While it has been generally held that a finding is sufficient if it recites the general prerequisite to an award, the Appellate Court at one time considered such findings as mere conclusions of *742 law. That Court held that as conclusions, they had to be supported by rather precise statements of ultimate fact. If such statements were not included in the finding, the Appellate Court considered itself free to disregard the finding. These cases were however, disapproved in 1919, and overruled in 1921, when the Appellate Court turned to a more lax attitude toward findings in compensation cases. The Appellate Court has reiterated several times that a sufficient finding exists in a compensation case if the Board mouthes the general language of the statute. Even a motion to make more specific may be denied if the finding embraces the statutory language, and any other matter will be relegated to surplusage.
"It seems that there is now no need for the Board to state in its award the method by which it reaches its results. This is conceived on the theory that the Act calls for a summary manner of procedure. The Appellate Court has held that the term summary means "concise, condensed to the utmost degree, performed without formality," and that the Act manifests the intention of the Legislature that speed should stand out boldly.
"However, it seems equally appropriate that a summary manner of procedure should contemplate some reasonable basis upon which to ground administrative action. Certainly the Legislature, in assigning speed as an objective of the Compensation Act, did not intend to call for arbitrary action based upon only an administrative hunch or a feeling of compassion for a claimant. The very purpose of requiring findings to be made is to enable a court on review to decide whether there was legal foundation for an award. If the Industrial Board is allowed to state conclusions of law without precision, no reviewing court can fathom the operations leading to an award. Moreover, the parties to the proceedings should have some right to know how they won or lost their case. While the present practice of accepting general conclusions may serve to conceal administrative ineptness, it is hard to conceive of this as a justification of the practice. Conclusions of law have never been acceptable as findings of fact in court cases, and there seems little reason to consider them differently in administrative cases.
"In a 1948 Public Service Commission cases [Kosciusko County Rural Electric Membership Corp. v. Public Service Comm. (1948) 225 Ind. 666, 675, 77 N.E.2d 572, 576.], the state Supreme Court has indicated a retreat from the acceptance of conclusions of law in place of findings of fact, and it is to be hoped that the same trend will prevail in compensation cases. It is encouraging to find that both our courts seem to be moving in that direction. Although no case yet requires the full measure of precision thought desirable, both the Supreme and the Appellate Courts have held that the Board must make a finding on every issue presented to it in a compensation case. Such language could easily be construed to require more precision in findings than now exists." Small, Workmens Compensation Law of Indiana (1950), § 12.7, pp. 394-6.
Professor Davis has said this:
"The bulk of the judicial opinions about administrative findings are concerned with determining just how detailed the required findings should be, that is, with determining what `basic findings' must be stated in support of the `ultimate findings.' Trouble spots involve such problems as whether basic findings may be implied from ultimate findings, whether ultimate findings may be implied from the action taken, and whether jurisdictional findings should be treated as a special category. Of special interest are the legal novelty of findings properly made without supporting evidence, and the correlation between inadequacy *743 of findings and reviewing judges' disagreement with policies applied.
"The amount of litigation involved with adequacy of administrative findings is tremendous. On first impression, most of the cases remanded for a better statement of findings seem to involve a great deal of wasted energy and needless expense. Of course, the first impression is correct to the extent that the system would be more efficient if the agencies would only give a little more careful attention to the form and content of their findings. But litigation about findings is not limited to mechanics about recitations of the right words. A very large portion of the cases remanded for better findings are an inevitable result of the system of a limited judicial review. When the court's view of law or policy differs from that of the agency, the agency's findings often fail to answer the questions the court deems crucial, and the only proper disposition the court can make of the case is a remand to the agency so that the needed answers can be supplied. Judicial decisions on inadequacy of administrative findings are thus one of the principal tools by which courts impose their limited control of administrative development of law and policy." 2 Davis, Administrative Law Treatise, § 16.01, p. 436."
The National Conference of Commissioners on Uniform State Laws and the American Bar Foundation have also given their attention to this matter (as well as to the whole field of state administrative law). The Revised Model State Administrative Procedure Act (of which § 12 requires that "[f]indings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings") is a product of the uniform laws commissioners and is found in the appendix to 2 Cooper, State Administrative Law (1965), 797-824. (See n. 23, this opinion, p. 750 of 289 N.E.2d).
Professor Cooper's aforementioned two volume work is apparently the only textbook devoted exclusively to state administrative law. It is the end result of a project sponsored by the American Bar Foundation and the University of Michigan Law School. With respect to the necessity for specific findings of fact Professor Cooper states:
"[I]t is an indispensable prerequisite to effective judicial review that the agency's decision set forth the findings of basic fact, as well as the conclusions of ultimate fact and conclusions of law derived therefrom. Nowhere has this necessity been more clearly explained than in Saginaw Broadcasting Company v. Federal Communications Commission. [68 U.S.App.D.C. 282, 96 F.2d 554, 559 (App.D.C. 1938)]. The court pointed out that the process which an agency follows in reaching a decision `necessarily includes at least four parts:'
(1) evidence must be taken and weighed, both as to its accuracy and credibility; (2) from attentive consideration of this evidence a determination of facts of a basic or underlying nature must be reached; (3) from these basic facts, the ultimate facts, usually in the language of the statute, are to be inferred, or not, as the case may be; (4) from this finding the decision will follow by application of the statutory criterion.
"The distinction which the court so clearly made between `basic facts' and `ultimate facts' is the key to the matter, for as the court further put it:
When a decision is accompanied by findings of fact, the reviewing court can decide whether the decision reached by the court or commission follows as a matter of law from the facts stated as its basis, and also whether the facts so stated have any substantial support in the evidence. In the absence of findings of fact, the reviewing *744 tribunal can determine neither of these things." 2 Cooper, State Administrative Law (1965) p. 465.
Professor Cooper also points out that:
"A second purpose is served by the requirement that administrative decisions in contested cases be accompanied by precise and detailed findings of all the relevant basic facts  and this purpose is of equal importance. The requirement leads to clear, hard thinking on the part of the agency members and their staffs. It is easy to express an ultimate conclusion: that a claimant was available for work, for example, or that the public interest requires the denial of a license. But when one is forced to demonstrate that such conclusions are consistent with all of the basic facts disclosed by the record, careful and painstaking analysis is required... . Hence the requirement that agencies must make detailed findings of fact ... is another means of assuring just, carefully reasoned, and fully informed decisions." Id. at 467.
Volume Two of Cooper's work, pages 465-481 is replete with citations of cases and statutes which require state administrative agencies to make precise and detailed findings of all the relevant basic facts.
When we directed the Board to certify more specific findings to us, our opinion referred to Miller v. Barrett, supra (269 N.E.2d 772, 25 Ind.Dec. 547) and said "[t]he recital of facts which was an essential part of the affirming opinion ... is not only proof that the board's finding of facts was not specific enough to enable us to review intelligently the board's decision, but also answers the question of how specific a finding of facts must be to be specific enough." While that statement is quite true, it is inadequate and may have misled the Board. Among its shortcomings, that statement fails to point out that the specific findings we need are those which are relevant to the contested issues, the disputed issues, which is to say, the specific facts which are basic to the ultimate facts upon which the parties have been unable to agree.
As to the other elements of the claimant's burden of proof, the uncontested and undisputed elements, on which the Board must make a finding[5], it is relatively unimportant whether the facts are found specifically or whether the Board merely "mouthes the general language of the statute."[6]
In the case at bar, for instance, the details of the accident in which decedent was fatally injured and the nature of his injuries are of no importance here because there is no dispute concerning whether the decedent received an injury by accident or whether that accident arose out of and in the course of the employment or whether the injury caused the death.[7] In their original *745 briefs both appellant and appellees were satisfied in those respects, with the finding that decedent "sustained an accidental injury in the course and scope of his employment, which accident and injury resulted in his death... ." Therefore, those quoted words, although general to the point of completely obscuring the Board's reason for so concluding were acceptable to us.[8] Had the defense been horseplay, however, as in Block v. Fruehauf (1969), 146 Ind. App. 70, 252 N.E.2d 612, 19 Ind.Dec. 489, or that the employee was on a personal mission of his own, as in Miller v. Barrett (1971), Ind. App., 269 N.E.2d 772, 25 Ind. Dec. 547, such generality, either as quoted above or in the usual statutory language that the "injuries [either did or] did not arise out of [and] or in the course of his employment" would not satisfy the need of the reviewing court to know the specific facts which led the Board to that general conclusion of ultimate fact.
Returning to our statement that `[t]he recital of facts which was an essential part of the affirming opinion [in Miller v. Barrett, supra (269 N.E.2d 772, 25 Ind.Dec. 547)] ... answers the question of how specific a finding of facts must be to be specific enough", we now realize that most of that Miller v. Barrett "recital" was of uncontradicted evidentiary facts forming the basis of the later examination of the "factual inferences" which were in dispute. That examination took the form of a discussion of similar reported cases in which the opinion always assumed (either expressly or impliedly), that the Board had drawn the factual inference legally appropriate to the result it reached and had not drawn permissible inferences which legally would have required a contrary result, for instance: "[T]he Board could have determined from the facts that there was such an incidental connection [between employment and injuries as would have made the injuries compensable] but we do not believe that it was bound to do so under all of the facts in this case as a matter of law." (269 N.E.2d at 776, 25 Ind.Dec. at 553.)
Our reference to Miller v. Barrett should have noted that the term "factual inferences" is but an abbreviation of "facts found by inference". Both ultimate and basic facts, which is to say, both general and specific facts may be derived by inference. In the Miller v. Barrett affirming opinion the reference to "factual inferences" is to specific facts rather than to ultimate facts. The disagreement between the two opinions was whether (1) we should presume that the Board had inferred from the evidence the basic (or "subsidiary" or "specific") facts which were the "most favorable to the [Board's] decision" or (2) whether we should require the Board first to state those basic facts, as well as all other relevant facts, with sufficient specificity, or detail, that we could determine whether its decision was or was not contrary to law. As the nonaffirming opinion in Miller v. Barrett pointed out, unless we require the Board to find the facts "we insure that it can never err as to the law."[9] (More accurately, it never appears to err as to the law because we supply the facts to fit the law.)
The Board's domain is the facts; ours is the law. We usurp its authority if we find by presumption the facts it fails to find expressly.[10] It frustrates our review *746 authority when it fails to make its findings of fact specific enough to make an intelligent review possible.[11] Its finding of facts is minimally "specific enough" for that purpose when, and only when, we are not required to weigh the evidence *747 ourselves, or to presume that the Board reached certain results when it weighed the evidence, in order to determine that the Board's finding of an ultimate fact is or is not "contrary to law." We are not required to weigh the evidence when, and only when, we are not required to determine the credibility of witnesses, nor to resolve conflicts in the evidence, nor to choose between permissible inferences, nor to presume with what result the Board evaluated the evidence in each or any of these respects, in reaching its decision as to the existence of an affirmative, or negative, ultimate fact found by it. But the Board's finding should go beyond this minimal requirement of resolving the factual disputes and should state all the relevant underlying or basic, facts.
For instance, the parties stipulated in writing that when decedent first "reported to the freight terminal of ... [TMX] in Terre Haute ... on behalf of ... [Riss, he (decedent)] entered into the trip lease agreement attached hereto, incorporated by reference and marked Exhibit `A'." When the Board made its second finding of facts it quoted from that item of the stipuation but omitted therefrom the words we have italicized. Nor did the Board at any place set forth the provisions of the trip lease, notwithstanding that its provisions are the cornerstone of plaintiffs' argument that TMX was decedent's employer because the lease gave TMX the right of control over decedent and his equipment.
While that omission renders the finding of facts incomplete and constitutes a failure on the part of the Board to discharge its statutory duty to file its award "with the facts on which it is based", it is not necessarily a fatal omission. We can, by reason of the stipulation, search the record to learn the wording of the instrument without thereby making a finding of fact ourselves.
What is fatal to the finding is its failure to resolve the dispute between the parties as to the factual inferences to be drawn from decedent's entry into the trip lease agreement when that act is considered with reference to what happened before and after it took place. What those "before" and "after" facts are seems to depend not only on what the parties stipulated, but on what those stipulations mean, i.e., how they were understood by the Board in the light of the testimony and other evidence believed by the Board and in the light of facts inferred by the Board from any or all of the evidence.
When we speak of "factual inferences to be drawn from decedent's entry into the trip lease agreement" we have in mind, for instance, TMX's arguments concerning the effect of that document. TMX contends it is a mere fiction, a device made necessary by what TMX calls "some archaic regulation of ICC". If the lease is anything, TMX says, it is "merely a document of permissive use", meaning, we suppose, permissive use by Riss of TMX's ICC and PSC rights to haul the cargo in question from Crane to Joliet. TMX "urgently contends [that the trip lease] is purely a sham [and] is the only evidence in the case from which it can possibly be said that decedent was an employee of TMX and under its direction and control". It argues that instead of Riss leasing its equipment with driver to TMX, Riss purchased TMX's consent to Riss operating under its ICC and PSC permits. Implicit in that argument is the unarticulated suggestion that since ICC regulations to not authorize the lending or leasing of an ICC franchise the cooperating carriers enter into what TMX calls "would-be leases". These "leases" make it appear that the franchisee or permittee is doing the hauling in a truck leased with a driver, both of which it has a right to control, but the fact is that the apparent lessor is doing the hauling itself and has not parted with the right to control its truck and its driver. In connection with this argument TMX asserts that instead of the lessee paying rent to the lessor for the use of the equipment and the services *748 of the driver, the lessor (Riss) paid the lessee (TMX) a fee of $50.00 and, thus, "that Riss was in fact paying TMX $50 to enable Riss to go to Crane, Indiana and pick up some cargo it had contracted to haul." TMX contends that "what actually did occur insofar as control and direction is concerned" amounts to a construction of the lease by the parties which overrides the provisions of the lease with respect to direction and control.[12]
TMX also makes other contentions with respect to what it considers indicia of the relationship of employer and employee. Among those contentions are that it entered into no employment contract with decedent; had no right to discharge him; did not pay him or have him on its payroll; did not tell him where to go, what to pick up, or where to take it; nor was it the lessee's (TMX's) cargo which was being transported.
All of these arguments present to us, just as they did to the single hearing member and to the full Board, both questions of fact and questions of law. In making his decision the hearing member applied to the facts, as he believed them to be, the rules of decision he thought to be the law.[13] On review the members of the full Board repeated the process and a majority thereof reached an opposite conclusion. They may have reached that opposite conclusion because they disagreed with his factual determinations or because they disagreed with his understanding of the law or for both reasons. Whether the basis of their disagreement was factual or legal or both is not our concern because it was both their right and their duty to find the facts for themselves and to apply to those facts the law as they understood it to be. The hearing member's finding of fact was in no *749 way binding on them[14] as is theirs on us.[15] It is for that reason that the statute[16] does not require the hearing member to file with his award "the finding of the facts on which it is based" as does the statute pertaining to full Board awards.[17] Our concern is whether the full Board applied the proper rules of law to the facts which it found. That question we cannot answer until the Board gives us a complete statement of all the facts on which its award is based (as respects whether TMX was decedent's employer). What we have already said should have made clear that, in light of the conflicting contentions of the parties, the Board could not have found the ultimate fact that TMX was decedent's employer without first having found many specific facts basic to that ultimate fact; basic facts which it has not included in the findings it has certified to us.
The Statute (Ind. Ann. Stat. § 40-1512 [Burns 1965 Repl.]) under which TMX has "appealed" to this court provides, inter alia:
"An award by the full board shall be conclusive and binding as to all questions of (the) fact, but either party ... may ... appeal to the Appellate Court for errors of law... ."
* * * * * *
"An assignment of errors that the award of the full board is contrary to law shall be sufficient to present both the sufficiency of the facts found to sustain the award and the sufficiency of the evidence to sustain the finding of facts."
Our former practice of accepting "findings" in which "the Board [merely] mouthes the general language of the statute"[18] has made "the sufficiency of the facts found to sustain the award" a rarely stated reason for reversal. It also nullified the provision that the full Board's award "shall be conclusive and binding as to all questions of (the) fact" and ignored the caveat of Cole v. Sheehan Construction Co. (1944), 222 Ind. 274, 281, 53 N.E.2d 172, 175, that "[t]he statute does not contemplate that the functions of the Industrial Board may be assumed by the courts." And finally it has led to the development of a practice in which the claim of error which forms the issue in most compensation appeals is the sufficiency of the evidence to sustain the award; not "the sufficiency of the facts found to sustain the award", as the statute states.[19]
This case is no exception. The briefs for the parties are written on the *750 basis of that issue (i.e., the sufficiency of the evidence to sustain the award). Each party gives us its version of the "facts" as it, not the Board, finds them from the evidence, leaving to us, not the Board, the task of resolving the conflicts. Our prior directions to the Board should have told the parties that we would no longer perform that function; that we were striving for findings by the Board which would enable us to function not as fact finders, but as a court of review whose duties would be limited to determining (1) "the sufficiency of the facts found to sustain the award" [when the issue is raised] and (2) "the sufficiency of the evidence to sustain [any specifically challenged] finding of facts."[20] We not only assumed that the parties did so understand the import of the directions we had given the Board, but that they also understood that the basis on which they had argued the facts in their briefs had been swept away. We assumed that after the Board had certified its finding of facts to us, the parties would wish to recast their factual arguments to give them meaning, relevance, and cogency in this new context. Accordingly we provided time limits within which the parties could file supplemental briefs. Only the appellant has done so. Disappointingly, however, that brief merely demonstrates our failure to make our meaning clear in our prior opinion. Appellant contends, in its supplemental brief, that the findings are fatally defective for failing to state that the accident arose out of the employment,[21] yet makes no contention that the Board has erred in failing to make findings as to facts which it contends are "shown by all the evidence [and] must lead to the conclusion that the decedent was an employee of Riss at the time of his death and not of TMX."
We can only hope that we have finally succeeded in convincing the parties that we will no longer search the evidence for the facts necessary to sustain or overturn the award. For that purpose we will look only to facts which the Board has found. It is only when specific basic facts found are challenged as not being sustained by sufficient evidence, or that the evidence requires the finding of a pertinent fact which the Board failed to find, that we will look to the evidence.[22] This casts on the parties a practical burden of assisting the Board by making available to it a proposed finding of the facts it contends should be found, such proposed finding being made specific enough to enable this court intelligently to review the award in event of an appeal.[23]
*751 When we issued our prior directive to the Board we were not unaware of the following admonition given the Appellate Court in Cole v. Sheehan Construction Co. (1944), 222 Ind. 274, 281, 53 N.E.2d 172, 175:
"The better practice would appear to be to remand the proceeding to the Board with directions for it to discharge its statutory duty by finding the essential facts, and by entering an award based thereon. When that has been done any party feeling aggrieved may have a judicial review according to the established practice."
We deliberately chose to depart from the "established practice" by retaining jurisdiction. We had thought to spare the parties as much inconvenience, delay and expense as possible. We succeeded only in robbing ourselves of the assistance of counsel. It would have worked to the advantage of all concerned had we followed the "better practice".
The Board's findings of fact having failed to resolve all the relevant issues of basic or subsidiary fact underlying its finding of the ultimate fact that "[a]t the time of the injuries causing his death ... decedent ... was an employee of ... [TMX]" the award must be set aside and the case remanded to the Board with directions consistent with the foregoing. But there is another issue to which we should first address ourselves.
TMX timely filed a "Special Answer" before the Board in the first paragraph of which it pleaded in considerable detail that plaintiffs had filed a claim with the Industrial Accident Board of Texas alleging that decedent was an employee of J & H Truck Leasing or Riss, which claim culminated in a compromise settlement with Riss "by and through its insurer" whereby plaintiffs were awarded compensation which was paid. TMX alleged that by reason thereof "it has been determined that ... [decedent] was an employee of Riss ... and that the question of who was the employer of ... [decedent] ... has been adjudicated and such question is now res adjudicata." Also, "that... full faith and credit is to be given to the adjudication of the Industrial Accident Board of the State of Texas... . [t]hat ... the issue ... as to the employer of ... [decedent] has been determined ... [and plaintiffs are] thereby bound by the adjudication of said Industrial Accident Board...." The second paragraph alleged payments made by Riss and that TMX should be given credit therefor if held to be decedent's employer. The third paragraph was withdrawn.
The single member sustained TMX's special answer "for the reason that plaintiff [sic] was not an employee of ... *752 [TMX] and, therefore, the Industrial Board of Indiana is without jurisdiction". (His decision, therefore, appears to have been founded on the first paragraph of TMX's answer, i.e., res judicata.)
When the full Board found that TMX and Riss were both decedent's employers it also found that Riss had paid benefits under the Texas award for which it should have credit, but made no other mention of that award.
TMX's argument on appeal with respect to the Texas award, as summarized in TMX's appeal brief was:
"The approval of such settlement constituted an adjudication that decedent was an employee of Riss. The Full Industrial Board of Indiana failed to give full faith and credit to the award of the Texas Board in violation of Article 4, Section 1, of the Constitution of the United States of America."
Its authority was Magnolia Petroleum Co. v. Hunt (1943), 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149, in which the same parties were involved in successive workmen's compensation awards, first in Texas and later in Louisiana. Plaintiff-appellees' brief pointed out that TMX was not a party to the Texas proceedings and cited Kunkler v. Mauck (1940), 108 Ind. App. 98, 27 N.E.2d 97, to the effect that the defendant in the second case who was not a party to the first award cannot invoke former adjudication as a defense.
TMX, in its reply brief then shifted its Full Faith and Credit reliance from the Texas award to a Texas statute, saying:
"Full Faith and Credit requires that the statutory provisions of the Texas Workman's Compensation Law be given faith and credit by the State of Indiana. The Texas statute itself provides that it shall afford the exclusive remedy to an injured Texas employee. By virtue of plaintiffs proceeding under the Texas Workman's Compensation Law and obtaining an award thereunder, they have exhausted their workman's compensation remedies as to Texas or any other state."
It iterated that tack in its supplemental brief after the Board had included in its findings the conclusion that "[t]he liability of ... [TMX] to plaintiffs was not an issue in the [Texas] proceedings ... and such liability was not adjudicated by that proceeding." Said TMX:
"This is not contested. However, this fact[24] has no bearing on the question of law presented herein. The Texas statute affords the exclusive remedy. By proceeding under the Texas Statute, the plaintiffs made an election of remedy. Full faith and credit must be given to the exclusive remedy provided by the Texas Statute and plaintiffs cannot receive a successive recovery under the Indiana Workmen's Compensation Act."
In neither its reply brief nor its supplemental brief does TMX cite or quote *753 the statute on which it relies. In its initial brief TMX cites only two statutes in the following words:
"The Workmen's Compensation statute of the State of Texas in Article 8603, Section 3, provides that employees subject to the act:
`Shall have no right of action against their employer or against any agent, servant, or employee of said employer for damages for personal injuries, but such employees shall look solely (emphasis ours) to the Association (the insurer).'
"Further it is provided in Article 8603, Section 19, that:
`If an employee who has been hired in this state, sustain injury in the course of his employment, he shall be entitled to compensation according to the law of this state even though such injury was received outside of the state, and that such employee, though injured out of the State of Texas, shall be entitled to the same rights and remedies as if injured within the State of Texas... .'"
The first of those statutes (Art. 8306, § 3) is mentioned in Magnolia, as follows:
"In Texas a compensation award against the employer's insurer (with exceptions not here applicable, cf. Revised Civil Statutes, Art. 8306, § 5) is explicitly made by statute in lieu of any other recovery for injury to the employee, since Art. 8306, § 3 provides that employees subject to the Act `shall have no right of action against their employer or against any agent, servant or employee of said employer for damages for personal injuries ... but such employes ... shall look for compensation solely to the association [the insurer].' A compensation award which has become final `is entitled to the same faith and credit as a judgment of a court.' See Ocean Accident and Guarantee Corp. v. Pruitt, Tex.Com.App., 58 S.W.2d 41, 44, 45... ." (320 U.S. at 434, 64 S.Ct. at 211).
This is a lead into, and a part of, the discussion which makes the point that the employment injury of the employee hired in Louisiana, his state of residence, and injured in Texas gave rise to but one cause of action against the employer which he could enforce under the law of either state but not both. All the court said in Magnolia related only to the obligation of the single employer to an employee injured by accident arising out of and in the course of his employment. It is clear that the court was not addressing its remarks to any possible obligation of a co-employer or of a negligent third party which might have arisen out of the same injury. This is demonstrated in its discussion of the rejected proposition that Louisiana can apply its own law because it provides more generous benefits, as follows:
"Indeed no constitutional question would be presented if Louisiana chose to be generous to the employee out of the general funds in its Treasury. But here it is petitioner who is required to provide further payments to respondent, contrary to the terms of the Texas award, which, if the full faith and credit clause is to be given any effect, was a conclusive determination between the parties that petitioner should be liable for no more than the amount of the Texas award." (320 U.S. at 442, 64 S.Ct. at 215).
Whatever meaning may be drawn from sentences taken out of context from the Magnolia opinion, the holding of the case is that the Full Faith and Credit Clause required Louisiana to give the Texas award the same effect, "between the parties", that it had in Texas. It does not hold that a Texas law makes an award against one employer (or the employer's insurer) a bar to a claim against a co-employer or his insurer. Nor do we read that in the words of the Texas statutes which have been quoted to us. What we do read is that injured employees *754 have no right of action against their employers or his agents, servants or employees but must "look solely to the ... [insurer]." Art. 8306, § 3, quoted supra. We see no attempt to exclude rights of action under the laws of other states against co-employers who are co-employers only outside the State of Texas. Certainly Art. 8306, § 19, applies only to "an employee[,] who has been hired in this State". If decedent was an employee of TMX, there is no evidence that he was hired by TMX in Texas. Assuming, arguendo, that there was evidence which would have required a finding that decedent was hired in Texas by Riss, § 19 appears to authorize the Texas claim that was filed against Riss' insurer and it may be that Magnolia makes the award rendered pursuant thereto res judicata as to Riss' liability, but we fail to see how a Texas employment contract and a Texas award, neither of which involved TMX, can affect its liability under an employment contract which, if it was made, was not made in Texas. Nor has it been demonstrated how a law of Texas (if there is such a law) can extra-territorially make the bringing of the action in Texas against Riss an election not to pursue a cause of action in Indiana against TMX. There is no evidence from which it could have been found that the legal obligation arising out of the relationship between decedent and TMX, whatever it was, is to be measured by Texas law.[25]
The award of the full Industrial Board of Indiana is reversed and this proceeding is remanded to the Board with directions to discharge its statutory duty by finding the essential facts with sufficient specificity and in such pertinent detail that in event of an appeal this court will be able to make an intelligent review of the award based thereon, which award the Board is also directed to enter.
Reversed and remanded with directions.
NOTES
[1] Appellant contends there are two reasons the Board erred in finding TMX to be an employer of decedent: (1) It failed to give full faith and credit to a Texas award which approved a settlement with Riss; (2) On the merits, TMX was not decedent's employer.
[2] Ind. Ann. Stat. (Burns 1972 Supp.) § 40-1511, IC 1971, 22-3-4-7. For the history of the Appellate Court's attitude toward findings by the Board see Small, Workmen's Compensation Law of Indiana (1950) § 12.7, pp. 394-6, and the same section (12.7) of Segar's 1968 Cumulalative Supplement (Pocket Part), pp. 113-5.
[3] Robinson v. Twigg Industries, Inc. (1972), Ind. App., 281 N.E.2d 135, 30 Ind.Dec. 352; Johnson v. Thomas & Skinner, Inc. (1972), Ind. App., 282 N.E.2d 346, 30 Ind.Dec. 640.
[4] Transport Motor Express, Inc. v. Smith (1972), Ind. App., 279 N.E.2d 262, 266, 29 Ind.Dec. 417, 422.
[5] "In cases of affirmative awards of compensation, the Board must expressly find (1) that the workman was an employee of the defendant and was within the Act; (2) that he received an injury by accident; (3) that the accident arose out of and in the course of the employment: (4) the character and extent of the injury; and (5) the claimant's average weekly wage. In short, the finding must embrace all the elements within the claimant's burden of proof. * * * "If someone other than the workman is claiming the compensation the Board must make findings on the facts making up the derivative right." (Footnotes omitted.) Small, Workmens Compensation Law of Indiana (1950), § 12.7, p. 393.
[6] Quotation from Small, n. 5, ante.
[7] Or, as Prof. Cooper puts it:

"It is not easy, of course, to determine in every case which are the `ultimate' and which the `basic' facts. Whether an individual was employed by a company might be a basic fact under some circumstances; but in a different situation, this issue might be the ultimate point in controversy. In the former case, a finding that he was an employee would be sufficient; in the latter, per contra, such a finding would have to be supported by a statement of the underlying factual minutiae on which the conclusion was based." 2 State Adm.Law 475.
[8] Only in its supplemental brief did appellant contend that the Board had failed to find that decedent's death arose out of his employment. Whether the quoted words are tantamount to a finding that the injury "arose out of and in the course of his employment" we do not decide because we reverse by other grounds.
[9] 269 N.E.2d at 779, 25 Ind.Dec. at 558.
[10] Cole v. Sheehan Construction Company (1944), 222 Ind. 274, 280, 53 N.E.2d 172, 175.

Some negative awards are the lawful and proper result of there being no evidence at all in the record as to some one or more relevant questions of basic fact. In such a case it is impossible for the Board to find either that such basic fact does exist or that it does not exist, but the Board can and should find that there is no evidence either affirming or negating such fact. If, however, the Board fails to make the appropriate "no evidence" finding, the reviewing court can affirm such an award without thereby usurping the Board's fact finding authority. To sift the evidence to find that there is no evidence of some fact essential to an affirmative award is not to make a finding of fact.
Likewise, some affirmative awards are contrary to law because there is no evidence at all of some one or more basic facts essential to the inference of a necessary ultimate fact which the Board has found. When such a case comes to a reviewing court without a finding of basic facts the reviewing court may choose to reverse for want of evidence rather than for want of findings.
But when either an affirmative or negative award comes to a reviewing court based on sufficient evidence, yet evidence which would sustain a finding of one or more basic facts inconsistent with the award, the court cannot affirm in the absence of an express specific finding of basic facts consistent with and fully sustaining the award. For the court to affirm by assuming that the Board so found is actually for the court to make the finding.
Massachusetts is a state which requires specific findings of basic facts (which it calls "subsidiary" facts).
"Nevertheless, a case ordinarily will not be remanded to the reviewing board for the finding of subsidiary facts if the evidence would not warrant a finding contrary to the general finding of the reviewing board. See Rozek's Case, 294 Mass. 205, 207, 200 N.E. 903; Cahill's Case, 295 Mass. 538, 539, 540, 4 N.E.2d 332. This is not on the ground that it was not the duty of the reviewing board to make findings of subsidiary facts, but is rather on the ground that the rights of the parties were not jeopardized by the failure to make such findings (see Cahill's Case, 295 Mass. 538, 539, 540, 4 N.E.2d 332), and that it is apparent that such findings would serve no useful purpose, since in no event could such findings, warranted by the evidence, lead to a result contrary to the general finding of the reviewing board. There may be exceptional cases in which the evidence is of such a character that findings of subsidiary facts are not required. But the statutory procedure for workmen's compensation cases does not contemplate that ordinarily the reviewing board should dispose of a case by an express or implied ruling upon the sufficiency of the evidence  as, for example, may be done in an action at law by the direction of a verdict  without passing upon the credibility of the evidence or stating the inferences draw therefrom. It is the duty of the reviewing board to find the facts in such detail that the Superior Court can render the decree required by law upon the facts so found. The propriety of the rule requiring the finding of subsidiary facts by the reviewing board is particularly apparent in the present case where the reviewing board expressed doubt as to the credibility of much of the evidence in support of the claim of the claimant, although it did not state expressly that it disbelieved this evidence.
"We conclude, however, upon an examination of the evidence reported, that this evidence did not warrant a finding contrary to the general finding of the reviewing board. There was no evidence that the claimant was a dependent of the employee unless she was a member of his family. And the evidence did not warrant a finding that she was a member of his family." Roney's Case (1944), 316 Mass. 732, 739, 56 N.E.2d 859, 864.
The Massachusetts practice of reviewing the evidence to see if it would warrant a finding contrary to the general finding before a case is remanded for specific findings of the basic facts may recommend itself to us in some future case where the record is short and the fatal hiatus readily apparent. However, it will not be our routine practice to look first to the evidence when the Board's findings are deficient in specificity, detail, breadth or clarity. For entirely aside from their function of keeping reviewing courts out of the fact finding process, specific findings of basic facts serve too many other beneficial purposes for us to suggest that a good faith effort to make a detailed, comprehensive, unambiguous and specific finding of the basic facts need not be made in every case.
[11] Carlton v. Board of Zoning Appeals (1969), 252 Ind. 56, 64, 245 N.E.2d 337, 343, 16 Ind.Dec. 704, 711.
[12] As already noted those provisions of the "lease" are not set forth in the findings. With respect to it the findings say only:

"At the time ... [decedent] was dispatched by Riss... to Terre Haute ... it was intended [by whom?] that ... [decedent] trip lease himself and his equipment to ... [TMX]
.....
"... [Decedent] reported to ... [TMX's terminal] in Terre Haute ... and, on behalf of Riss ... entered into the trip lease agreement."
We also note that the Board did find that decedent "[w]hile operating under the said trip lease ... was required by ... [TMX] to follow a prescribed route of travel and to keep a log of his activities which was furnished to ... [TMX]." Also, that TMX had the right to stop him "and to require replacement of either the driver or the equipment for violation of ICC or PSCI rules and regulations." (These findings are quoted in full on page 740 of 289 N.E.2d.)
The Board did not find how (i.e., in what manner or by what means) or by what authority (e.g., whether by trip lease, ICC or PSC regulations, industry custom, agreement between TMX and Riss, or without authority) TMX required decedent to do these things, nor the source of TMX's "right" to require replacement. The ambiguities in these particular findings and many others (as well as the many omissions in all the findings) suggest (perhaps prove) that there is concerned within them a ruling (or rulings) of law. (For a better understanding of the concept of rulings of law concealed within findings of fact see Roney's Case (1944), 316 Mass. 732, 739, 56 N.E.2d 859, 864, in which the court noted that as the consequence of similarly defective findings it was unable to determine "whether the decision of the reviewing board was based upon the failure of the claimant to prove subsidiary facts or upon a ruling of law as to the effect of subsidiary facts proved but not expressly found.")
[13] This is but a shorted version of the adjudicative process described in Saginaw Broadcasting Company v. Federal Communications Commission (1935), 68 U.S.App.D.C. 282, 96 F.2d 554, 559, and quoted herein, ante p. 743 of 289 N.E.2d from 2 Cooper, State Administrative Law (1965), p. 465. It is also quoted in Burton v. Rock Road Construction Company (1968), 142 Ind. App. 458, 463, 235 N.E.2d 210, 213, 13 Ind.Dec. 671, 676.
[14] "[T]he statute [Burns § 40-1511, n. 2, post] that upon a review by the full board, the proceedings shall be in the nature of a hearing de novo and that the Industrial Board shall not be bound by the finding of a single member". McGuire v. Universal Gear Corp. (1939), 106 Ind. App. 107, 110, 18 N.E.2d 474, 475; Burton v. Rock Rd. Construction Co. (1968), 142 Ind. App. 458, 461, 235 N.E.2d 210, 212.
[15] "An award by the full board shall be conclusive and binding as to all questions of the fact, but either party ... may ... appeal to the Appellate Court for errors of law ..." Acts 1929, Ch. 172, § 61; IC 1971, 22-3-4-8; Ind. Ann. Stat. § 40-1512 (Burns 1965). It is, of course, an error of law to find an affirmative fact when there is no substantial evidence of probative value to sustain that finding or to fail to make an affirmative finding to which the undisputed and uncontradicted evidence unescapably leads. Lockwood v. Trustees (1969), 144 Ind. App. 430, 246 N.E.2d 774, 17 Ind.Dec. 282. Hence, the further provision of the above quoted statute that "[a]n assignment of errors that the award ... is contrary to law shall be sufficient to present both the sufficiency of the facts found to sustain the award and the sufficiency of the evidence to sustain the finding of facts."
[16] Acts 1929, Ch. 172, § 59; IC 1971, 22-3-4-6; Ind. Ann. Stat. § 40-1510 (Burns 1965).
[17] Acts 1929, Ch. 172, § 60, as amended by Acts 1969, Ch. 94, § 6; IC 1971, 22-3-4-7; Ind. Ann. Stat. § 40-1511 (Burns 1972 Supp.).
[18] Quoting Small. See ante, p. 742 of 289 N.E.2d.
[19] Ind. Ann. Stat. § 40-1512 (Burns 1965 Repl.), IC 1971, 22-3-4-8.
[20] Ind. Ann. Stat. § 40-1512 (Burns 1965 Repl.)
[21] See n. 8, p. 745 of 289 N.E.2d.
[22] Except in those rare cases noted in n. 10, p. 746 of 289 N.E.2d.
[23] "The most practical way yet devised of assuring that the agency will make a specific finding on every issue of basic fact relevant to the ultimate question on which the agency must pass, is to delegate to the adverse parties the responsibility of stating the issues of basic fact which the agency must resolve. This, of course, is a responsibility which the adverse parties are happy to assume." 2 Cooper, State Adm.Law 478.

§ 12 of the Revised Model State Administrative Act (1961) proposed by the National Conference of Commissioners on Uniform State Laws includes these provisions:
"Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings. If, in accordance with agency rules, a party submitted proposed findings of fact, the decision shall include a ruling upon each proposed finding."
The National Conference comment which follows § 12 includes the following:
"An attempt is here made to require agency findings to go beyond a mere statement of a general conclusion in the statutory language (e.g., that `public interest, convenience and necessity' will be served) or in language of similar generality. The intent is to require the degree of explicitness imposed by such decisions as Saginaw Broadcasting Company v. Federal Communications Commission (Ct.App.D.C., 1938), [68 U.S.App.D.C. 282] 96 Fed.2d 554... . The desire is to find the proper middle course between a detailed reciting of the evidence on the one hand and the bare statement of the conclusions of fact or the `ultimate' facts on the other. The phrase `underlying facts supporting the finding' seems about right." 2 Cooper, State Adm.Law 817.
The terminology may vary but the goal is the same: To obtain a finding "of fact ... specific enough to enable the court to review intelligently the [Board's] decision". Carlton v. Board of Zoning Appeals (1969), 252 Ind. 56, 64, 245 N.E.2d 337, 343, 16 Ind.Dec. 704, 711. Whether the facts which achieve that degree of specificity are called "subsidiary", "basic", "detailed", "underlying", or even less accurately (and certainly more confusingly) "evidentiary" or "ultimate" is unimportant so long as the Board's finding enables us to know precisely the factual basis of the Board's award (i.e., to what it means) without our being required to "choose between conflicting inferences" (Saginaw v. F.C.C., supra [96 F.2d at 559]; United States v. C.M. St. P. & P.R. Co., 294 U.S. 499, 55 S.Ct. 462, 79 L.Ed. 1023) as was necessary in Miller v. Barrett and would be here were we to attempt to decide on the present state of the record whether the Board committed an error of law in concluding that decedent was TMX's employee at the time of his fatal accident.
[24] Whether the finding is a "fact" or a "conclusion of law" is a semantical distinction not important here in view of its not being contested. But, obviously, if a person's liability is not an issue in a proceeding it is because the events which would have made it an issue did not occur (i.e., the circumstances essential to its being an issue did not exist). To be able to "find" then that one person's liability to another person was not in issue, the finder must know both what events would have made it an issue (a matter of law) and whether those events occurred (a matter of fact). Therefore, in stating that TMX's liability was not in issue the Board was making a ruling of law on undisclosed facts. The facts being undisclosed (i.e., not found) we do not know what the ruling of law was. Therefore, it may be said to be a finding which conceals a ruling of law. Roney's Case (1944), 316 Mass. 732, 738, 56 N.E.2d 859, 863. If the finding included a statement of the circumstances from which the Board determined that TMX's liability was not in issue we would know what ruling of law it made in so determining. The findings would no longer "conceal a ruling of law." (Ibid.)
[25] Our disposition of this issue requires us to assume the existence of negative facts, but in so doing we find no fact. We merely note that there is no evidence from which the affirmative could have been found. See note 10, p. 745 of 289 N.E.2d.